Geraldine L. STILLWELL, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–205.

United States Court of Veterans Appeals.

Argued Dec. 15, 1993.

Decided March 11, 1994.

Gracelia R. Helring, Arlington, VA, for appellant.

Paul J. Hutter, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Adrienne Koerber, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, FARLEY, and MANKIN, Judges.

KRAMER, Judge:

The case is before the Court on appellant's application for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

## I. Factual and Procedural Background

Appellant, Geraldine L. Stillwell, was married to Franklin Albert Stillwell who served on active duty in the United States Navy

from August 1943 to November 1946. In July 1989, after the veteran's death in April 1988, appellant, claiming eligibility as the veteran's "surviving spouse" within the meaning of 38 U.S.C. § 101(3), applied to the VA for dependency and indemnity compensation (DIC).

Statutory entitlement to death benefits as a "surviving spouse" requires, inter alia, that the person have lived continuously with the veteran from the date of their marriage to the date of the veteran's death, "except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse." 38 U.S.C. § 101(3). Pursuant to this statutory authority, the VA promulgated 38 C.F.R. § 3.50, which, as relevant here, is identical to the language of the statute. *See* 38 C.F.R. § 3.50(b)(1) (1993). The VA also promulgated 38 C.F.R. § 3.53, which provides, inter alia:

> (a) *General.* The requirement that there must be continuous cohabitation from the date of marriage to the date of death of the veteran will be considered as having been met when the evidence shows there was no separation due to the fault of the surviving spouse. Temporary separations which ordinarily occur, including those caused for the time being through fault of either party, will not break the continuity of the cohabitation.
>
> (b) *Findings of fact* .... If the evidence establishes that the separation was by mutual consent and that the parties lived apart for purposes of convenience, health, business, or any other reason which did not show an intent on the part of the surviving spouse to desert the veteran, the continuity of the cohabitation will not be considered as having been broken.

38 C.F.R. § 3.53 (1993).

Both the VA Regional Office and the Board of Veterans' Appeals (BVA or Board) denied appellant's claim. The BVA concluded that, "[w]hile ... appellant's statements and testimony are to the effect th[a]t the initial separation was due to abusive conduct on the part of the veteran, the fact remains that the evidence as a whole shows that there was never any intent on the part of ...

appellant to again cohabit with the veteran." *In the Appeal of Geraldine L. Stillwell in the Case of Franklin A. Stillwell,* BVA 91–34157, at 3 (Oct. 17, 1991). On February 10, 1992, appellant filed a timely appeal to this Court seeking judicial review.

After appellant's appeal had been pending for 15 months, and subsequent to the Secretary's filing a motion for summary affirmance in July 1992 which in large part was predicated on appellant's conduct after separation from her spouse, the Court issued *Gregory v. Brown,* 5 Vet.App. 108 (1993). *Gregory* addressed the statutory and regulatory framework set forth supra, and found the first sentence of 38 C.F.R. § 3.53(a) unlawful in that the regulation measured only the spouse's conduct, whereas the statute measured both the spouse's and the veteran's conduct. The Court in *Gregory* also noted that the spouse's conduct was to be measured under the statute only at the time of the separation, or subsequent to the separation only insofar as it bore upon the spouse's fault at the time of separation. The parties here filed a joint motion for remand pursuant to *Gregory,* stating that "a remand of the appeal would assure that the Board and the agency of original jurisdiction are fully apprised of the most recent case law in this area." The Court granted the joint motion on July 2, 1993, vacated the BVA decision, and remanded for readjudication. Judgment was entered on July 22, 1993, and, in accordance with Rule 36(b) of the Court's Rules of Practice and Procedure [hereinafter Rules], jurisdiction was retained "for the limited purpose of entertaining an application for attorney fees and expenses." U.S.Vet.App.R. 36(b).

On August 2, 1993, appellant filed her application for an award of reasonable attorney fees and expenses under the EAJA. The Secretary moved to dismiss appellant's application as untimely filed under Rules 36(b) and 39(a) of this Court's Rules. Appellant, contending that her application was timely filed under Rule 41(b) of this Court's Rules, opposed the Secretary's motion. Given the significance of the issues raised and the possible impact of the recent United States Supreme Court case, *Shalala v. Schaefer,* ——

U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), on Rules 36(b) and 39(a), the Court ordered supplemental briefing by the parties, oral argument, which was heard on December 15, 1993, and additional supplemental briefing. Since filing her EAJA application, appellant made two additional filings to request fees and expenses pertaining to the supplemental briefing, oral argument, and additional supplemental briefing.

## II. Applicable Law

### A. EAJA Background

The history and purpose of the EAJA was summarized by Justice O'Connor of the United States Supreme Court:

> In 1980, Congress passed the EAJA in response to its concern that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." As the Senate Report put it:
>
>> "For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it."
>
> The EAJA was designed to rectify this situation by providing for an award of a reasonable attorney's fee.

*Sullivan v. Hudson,* 490 U.S. 877, 883, 109 S.Ct. 2248, 2253, 104 L.Ed.2d 941 (1989) (citations omitted).

### B. Applicability of the EAJA to the Court

On October 29, 1992, Congress enacted section 506 of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 506, 106 Stat. 4506, 4513 (1992). Section 506(a) amended 28 U.S.C. § 2412(d)(2)(F) to make the EAJA applicable to this Court. Section 506(b) limited such application "to any case pending before the United States Court of Veterans Appeals on the date of the enactment of this Act [October 29, 1992]"

(found at 28 U.S.C. § 2412 note (Application of 1992 Amendment to Pending Cases)).

### C. EAJA Text

The EAJA, as relevant here, provides:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action, ... including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award ... and the amount sought, including an itemized statement.... The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

 . . . .

(2) For the purposes of this subsection—

 . . . .

(B) "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed ...;

 . . . .

(D) "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based ...;

 . . . .

(G) "final judgment" means a judgment that is final and not appealable. . . .

28 U.S.C. § 2412.

## D. Case Law

Precedent opinions, relevant to our inquiry, have been issued by the United States Supreme Court and the Court of Appeals for the Federal Circuit. Because the Supreme Court cases addressing the EAJA have arisen in the context of Social Security benefit determinations, the judicial review provisions under the Social Security Act should be set forth.

Judicial review of decisions of the Secretary of Health and Human Services (HHS) relating to Social Security benefits is provided for in 42 U.S.C. § 405(g). Under sentence four of § 405(g), the district courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [of HHS], with or without remanding the cause for a rehearing." In addition, sentence six of § 405(g) states:

> The [district] court may, on motion of the Secretary [of HHS] made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

Section 405(g) provides in the eighth sentence that "[t]he judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions."

*Hudson, supra,* the first Supreme Court case relevant to our analysis, was issued in June 1989 and applied the EAJA within the context of Social Security. The Supreme Court in *Hudson* held that when a court both remands and retains jurisdiction the administrative proceedings on remand are an integral part of the "civil action" under the EAJA, and, thus, a Social Security claimant is entitled to an EAJA award for representation during postremand administrative proceedings. *Hudson,* 490 U.S. at 892, 109 S.Ct. at 2253. It should be noted that the Supreme Court in *Hudson* did not differentiate between sentence four and sentence six remands.

The Court in *Hudson* found two points determinative to its holding. First, the Court stated that, "where a court's remand to the agency for further administrative proceedings does not necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status within the meaning of § 2412(d)(1)(A) until after the result of the administrative proceedings is known." *Id.* at 886, 109 S.Ct. at 2255. Second, since the EAJA requires the filing of the application for fees with the court "within thirty days of final judgment in the action" under § 2412(d)(1)(B), the Court stated that "there will often be no final judgment in a claimant's civil action for judicial review until the administrative proceedings on remand are complete." *Id.* at 887, 109 S.Ct. at 2255 (citation omitted). The Court concluded that, "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Id.* at 888, 109 S.Ct. at 2255–56.

Addressing the issue of finality for purposes of appeal (and not for purposes of the EAJA), the Supreme Court issued its decision in *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), in June 1990. The Court in *Finkelstein* held that a sentence-four remand order is a "final decision" under 28 U.S.C. § 1291 (providing that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts"), and thus is an appeal-

able judgment. The Court stated that the "remand order was unquestionably a 'judgment,' as it terminated the civil action challenging the [HHS] Secretary's final determination that respondent was not entitled to benefits, set aside that determination, and finally decided that the Secretary [of HHS] could not follow his own regulations in considering the disability issue." *Finkelstein,* 496 U.S. at 625, 110 S.Ct. at 2664. The Court rejected the claimant's argument that § 405(g) merely expanded the district courts' equitable powers, and concluded that the fourth and eighth sentences of § 405(g) "direct[ed] the entry of a final, appealable judgment even though that judgment may be accompanied by a remand order." *Id.* 496 U.S. at 629, 110 S.Ct. at 2666.

Relying upon *Finkelstein,* the United States Court of Appeals for the Federal Circuit held that it had jurisdiction over the Secretary's appeal of a remand order issued by this Court since the order was a final, appealable judgment. *Travelstead v. Derwinski,* 978 F.2d 1244 (Fed.Cir.1992). Following a review of the statutes governing this Court's jurisdiction and practice, the Federal Circuit in *Travelstead* stated:

> Here, the court rendered a "decision" interpreting a statute ... and compelling action of the Secretary, on remand, contrary to the Secretary's prior ruling. This "decision" was a final disposition of the proceeding respecting the Secretary's practice, and [judgment] ... was entered by the Clerk of the Court. Th[e] order unquestionably terminated the action before the court. The doors of the court were closed to the Secretary, the action ended.

*Id.* at 1248. This Court in the remand order at issue in *Travelstead* had not retained general jurisdiction of the matter.

The Supreme Court again addressed the EAJA in June 1991 in *Melkonyan v. Sullivan,* — U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). First, the Court held that a "final judgment" for purposes of EAJA § 2412(d)(1)(B) cannot be an administrative decision rendered following a remand, but can be only a judgment rendered by a court terminating the civil action for which

EAJA fees may be received. *Melkonyan,* — U.S. at ——, 111 S.Ct. at 2162. Second, the Court rejected the proposition that the district courts had inherent authority to enter remand orders not enumerated in § 405(g), and ruled that the statute authorizing judicial review of Social Security benefit determinations limits the district courts' authority to entering only two types of remand orders, one pursuant to sentence four and the other pursuant to sentence six. *Id.* 501 U.S. at 99–101, 111 S.Ct. at 2164. To be timely filed in light of the EAJA requirement that a "final judgment" be entered in the "civil action" in order to trigger the 30–day EAJA § 2412(d)(1)(B) filing period, the Court in *Melkonyan* concluded:

> In sentence four cases, the filing period begins after the final judgment ("affirming, modifying, or reversing") is entered by the court and the appeal period has run, so that the judgment is no longer appealable. See § 2412(d)(2)(G). In sentence six cases, the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs.

*Id.* 501 U.S. at 101–03, 111 S.Ct. at 2165.

The Supreme Court's most recent decision addressing the application of EAJA was issued on June 24, 1993. *Schaefer, supra,* involved a sentence-four remand where the district court had failed to enter judgment. The Supreme Court held that since the plain language of § 405(g) requires the district court to enter a judgment in connection with a sentence-four remand order, the order, upon expiration of the appellate period, constitutes a "final judgment" under § 2412(d)(2)(G) which triggers the 30–day EAJA filing period. *Schaefer,* — U.S. at ——, 113 S.Ct. at 2629 (citing *Finkelstein,* 496 U.S. at 629–30, 110 S.Ct. at 2666, and *Melkonyan,* 501 U.S. at 99–103, 111 S.Ct. at 2164–65).

In response to the petitioner's first argument that to effectuate *Hudson* a court may "hold its judgment in abeyance (and thereby delay the start of EAJA's 30–day clock) until postremand administrative proceedings are complete," the Court in *Schaefer* appeared to

limit the availability of EAJA fees for postremand administrative Social Security proceedings to remands ordered pursuant to sentence six of § 405(g). *Id.,* —— U.S. at ——, 113 S.Ct. at 2630. The Court stated: "We . . . do not consider the holding of *Hudson* binding as to sentence-four remands that are ordered (as they should be) without retention of jurisdiction, or that are ordered with retention of jurisdiction that is challenged." *Id.,* —— U.S. at ——, 113 S.Ct. at 2630–31. The Court, however, did not specifically address what the result would be as to the availability of EAJA for postremand work in a sentence-four case where jurisdiction had been improperly retained but had not been challenged, i.e., a *Hudson* situation. It simply stated in a footnote that by "limiting *Hudson* to sentence-six cases," it was *not overruling Hudson* "even in part." *Id.,* —— U.S. at —— n. 4, 113 S.Ct. at 2631 n. 4 (emphasis added).

In response to the petitioner's second argument that a sentence-four remand order cannot be a "final judgment" because "prevailing party" status cannot be determined prior to the completion of the postremand administrative proceedings, the Court in *Schaefer* stated that the "premise of this argument is wrong," and referred to such language in *Hudson* as "dicta." *Id.,* —— U.S. at ——, 113 S.Ct. at 2631. The Court found affirmative support for "the proposition that a party who wins a sentence-four remand order is a prevailing party" in *Texas Teachers Assn v. Garland Independent School Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989), which held that such status was "obtained '[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit . . . sought in bringing suit.'" *Schaefer,* —— U.S. at ——, 113 S.Ct. at 2632.

The Court in *Schaefer* agreed with the petitioner's third argument "that, even if the District Court *should have* entered judgment in connection with its . . . order remanding the case to the [HHS], the fact remains that it did not[, a]nd since no judgment was entered, . . . the 30-day time period for filing an application for EAJA fees cannot have run." *Id.* The Court stated that, although the

remand order was a "final judgment," the District Court had failed to enter judgment in compliance with Rule 58 of the Federal Rules of Civil Procedure, and thus the 60–day appeal period was not triggered. *Id.* Since an EAJA application may be filed within 30 days after a judgment becomes "not appealable" under § 2412(d)(1)(B) and (d)(2)(G), the Court concluded that, "[a]bsent a formal judgment, the . . . order remained 'appealable' at the time that [petitioner] filed his application for EAJA fees, and thus the application was timely under § 2412(d)(1)." *Id.* Last, it should be noted that the Court implicitly determined that the filing was timely even though premature because the appeal period had not run. *Id.; see also Melkonyan,* —— U.S. at ——, 111 S.Ct. at 2166.

### E. The Court's Powers, Practice, and Procedure

Pursuant to 38 U.S.C. § 7252(a), this Court has the "power to affirm, modify, or reverse a decision of the [BVA] or to remand the matter, as appropriate." In addition, while there is no statutory provision specifically addressing when a judgment is to issue, as in Social Security benefit determinations, or specifically addressing a mandate, § 7264(a) of 38 U.S.C. provides that "[t]he proceedings of th[is] Court shall be conducted in accordance with such rules of practice and procedure as the Court prescribes." Pursuant to this statutory authority, the Court adopted Rule 36(a) which provides that when the Court issues a decision, "the Clerk shall enter the judgment after [the expiration of 17 days] unless otherwise ordered by the Court." U.S.Vet.App.R. 36(a); *see* U.S.Vet. App.R. 26(c), 35(a). Appeal from a judgment of this Court may lie in the United States Court of Appeals for the Federal Circuit. *See* 38 U.S.C. §§ 7291, 7292. Section 7292(a) of 38 U.S.C. provides that "[a]fter a decision of [this] Court is entered in a case any party to the case may obtain a review of the decision . . . within the time and in the manner prescribed [in Rule 4(a)(1) of the Federal Rules of Appellate Procedure (FRAP)] for appeal to United States courts of appeals for United States district courts." FRAP Rule 4(a)(1) sets forth a 60–day period following the entry of judgment where the United

States is a party. Consistent with § 7292(a), this Court's Rule 36(a) also provides that "[e]ntry of the judgment begins the 60–day time period for any appeal." U.S.Vet.App.R. 36(a). Section 7291(a) of 38 U.S.C. provides that this Court's decision becomes "final upon the expiration of the time allowed for filing [an appeal] under section 7292." Rule 41 of this Court's Rules provides for the issuance of the mandate of this Court at the end of the appellate period: a "certified copy of the judgment and a copy of the opinion of the Court, if any, will constitute the mandate." U.S.Vet.App.R. 41(a). Special provision is made for an "order on consent dismissing or remanding a case" which will also constitute the mandate, the date of which will be the date of the certified order. U.S.Vet. App.R. 41(b).

Also pursuant to the statutory authority of §§ 7252(a) and 7264(a), and to facilitate the implementation of the EAJA, the Court, prior to the Supreme Court's decision in *Schaefer*, adopted Rules 36(b) and 39(a) on June 1, 1993, effective retroactively to October 29, 1992. Rules 36(b) and 39(a) provide:

### Rule 36. Publication of Decision and Entry of Judgment

. . . .

(b) **Upon Remand.** When a matter is remanded in a case in which the appellant is represented, unless the opinion, decision, or order specifies otherwise, the Court retains jurisdiction for the limited purpose of entertaining an application for attorney fees and expenses under Rule 39. Within 14 days after the final postremand administrative decision in such a case, the Secretary shall file a copy of that decision with the Clerk. After receiving that decision, the Clerk shall enter final judgment, unless good cause is shown why such judgment should not be entered, and shall send copies to all parties.

### Rule 39. Attorney Fees and Expenses

(a) **Time for filing.** An application pursuant to 28 U.S.C. § 2412 for award of attorney fees and other expenses in connection with an appeal must be filed with the Clerk within 30 days after this Court's judgment becomes final. See also 28

U.S.C. § 2412(d)(2)(G) and 38 U.S.C. § 7291(a).

U.S.Vet.App.R. 36(b), 39(a). Pursuant to Rules 36(a) (quoted in pertinent part in the preceding paragraph), 36(b), and 39(a), the Court's recent practice has been to enter two judgments, the first following the expiration of the 17-day period following the issuance of a remand order in which general jurisdiction was not retained, and the second, "final judgment," following the Secretary's return to Court to file the postremand administrative decision.

## III. Application of Law to Facts

### A. "Pending" Requirement

The Secretary does not contest that appellant's case satisfies the "pending" requirement, and thus that the EAJA applies. Since appellant filed her Notice of Appeal with this Court on February 10, 1992, and the matter was not disposed of by Court order until July 2, 1993, appellant's "case [was] pending [on the merits] before the United States Court of Veterans Appeals on ... [October 29, 1992, the date the EAJA was made applicable to this Court]." Pub.L. No. 102–572, § 506(b), 106 Stat. 4506, 4513 (1992) (found at 28 U.S.C. § 2412 note); *see Jones v. Brown,* 6 Vet.App. 101 (1993) (en banc).

### B. Party Requirement

The Secretary does not contest appellant's representations concerning her "net worth" for purposes of § 2412(d)(2)(B) (defining "party"). In addition, the EAJA empowers a court to "award ... fees and other expenses ... *incurred by that party.*" 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Although appellant "incurred" no fees or expenses because she was represented on a pro bono basis, the Federal Circuit has recognized that this fact does not preclude an EAJA award where appellant is otherwise eligible. *Phillips v. GSA,* 924 F.2d 1577, 1583 n. 4 (Fed.Cir.1991) (citing *Cornella v. Schweiker,* 728 F.2d 978, 985–87 (8th Cir. 1984)).

## C. Timely Filing Requirement and Fees for Postremand Administrative Work

A party seeking an EAJA award must, *"within thirty days of final judgment* in the action, submit to the court an application for fees and other expenses." 28 U.S.C. § 2412(d)(1)(B) (emphasis added). Although the Secretary initially moved to dismiss appellant's application for EAJA fees as untimely filed under Rules 36(b) and 39(a), he later argued in his supplemental brief that appellant's application was timely filed under *Schaefer* which had rendered Rule 36(b) "superfluous." Appellant, at all times, has argued that her application was timely filed under Rule 41(b). We agree with both parties on this issue.

Prior to the decision in *Schaefer,* as indicated *ante* at 298, this Court adopted Rules 36(b) and 39(a) in an attempt to implement, in compliance with *Hudson* and *Melkonyan,* both the timely filing requirement of the EAJA and the potential to recover fees for representation at administrative proceedings subsequent to remand. Since a remand where there was not also success on the merits did not confer "prevailing party" status under *Hudson,* since some form of retention of jurisdiction was necessary to be eligible for fees for representation at postremand administrative proceedings under *Hudson,* and since a "final judgment" could only be a judgment entered by a court under *Melkonyan,* there existed no process as to how and when a represented party who had obtained a remand from this Court could file for an award of EAJA fees, including fees for representation in the administrative proceedings on remand. To ameliorate this paradox, Rule 36(b) both delayed the Court's entry of final judgment until the Secretary returned to Court to file the postremand administrative decision and provided for limited EAJA retention of jurisdiction, and Rule 39(a) directed the EAJA applicant to file within 30 days after entry of "final judgment." Under these rules, "final judgment" was issued by a court of law at a time when "prevailing party" status would be known and fees for postremand administrative proceedings could be sought.

The Secretary is correct that *Schaefer* renders Rule 36(b) "superfluous." However, in addition to directing that a remand alone confers "prevailing party" status, the Supreme Court in *Schaefer* held that a remand order for which a judgment has been properly entered is a "final judgment" upon the expiration of the appeal period, and that fees for postremand administrative work would not be available in sentence-four remands where judgment was entered, but only in sentence-six remands where judgment had not been entered and possibly in sentence-four remands where jurisdiction had been improperly retained, but such retention had not been contested. Thus, insofar as this Court's practice under Rule 36(b) has been to enter two judgments, the first triggering the appeal period to the Federal Circuit and the second, a delayed "final judgment," triggering the EAJA filing period, it is contrary to the analysis in *Schaefer.*

The question thus becomes whether *Schaefer* is limited solely to Social Security remands, or whether it applies to any type of case where judgment has been entered in connection with a remand. In our view, the only fair reading of the language and import of the *Schaefer* decision compels the conclusion that it applies whenever judgment is entered as a consequence of judicial remand, at least where the remand is to an administrative agency. This conclusion is consistent with the Federal Circuit's opinion in *Travelstead.* While acknowledging that the specific holding in *Finkelstein,* 496 U.S. at 617, 110 S.Ct. 2658, was limited to the judicial review provisions of the Social Security Act, the Federal Circuit stated, "[W]e do not find its precedential effect so limited," and held that when this Court enters judgment following remand, the judgment is final and appealable. *Travelstead,* 978 F.2d at 1248.

Under Rule 36(a), after a decision of the Court is issued, the Clerk, upon expiration of a 17–day period, is required to enter judgment unless the Court orders that judgment is not to enter. Thus, any remand by this Court where judgment is entered is directly analogous to a remand under sentence four of 42 U.S.C. § 405(g). In such cases, pursuant to *Schaefer* then, the Court's entry

of the first judgment following the issuance of the Court's remand order and the passage of the 17–day period constitutes a "final judgment" for purposes of the EAJA upon the expiration of the 60–day appeal period. Therefore, when this Court issues a remand order, the 30–day EAJA filing period begins when the Court has entered judgment and the 60–day appeal period has run.

■ We now turn to applying this analysis to the case at hand. The Court issued its remand order on July 2, 1993, with judgment entered on July 22, 1993. The 60–day appeal period ended on September 20, 1993, thereby rendering the judgment "final and not appealable" for purposes of the EAJA, § 2412(d)(2)(G) (defining "final judgment"), and triggering the 30–day filing period. To be timely filed, appellant had from September 21, 1993, to October 20, 1993, to submit her EAJA application to the Court. The fact that appellant prematurely filed her application on August 2, 1993, is not fatal. As indicated *ante* at 297, the Court in *Schaefer* implicitly determined that such a filing was not untimely even though premature because the appeal period had not run. *See also Melkonyan*, 501 U.S. at 103, 111 S.Ct. at 2166. A premature filing is "treated as if" it were later filed. *Brewer v. Am. Battle Monuments Comm'n*, 814 F.2d 1564, 1569–1570 (Fed.Cir.1987) (citation omitted).

■ Alternatively, as appellant correctly contends, appellant's application was timely filed on the basis of Rule 41 of the Court's Rules. Pursuant to Rule 41(b), the date of the Court's remand order, July 2, 1993, is the date of the mandate, since it was "an order on consent … remanding a case." Under Rule 41(a), the mandate generally issues only following entry of judgment and expiration of the appellate period. Because the mandate marks the end of the appellate period under Rule 41(a), the 30–day EAJA filing period began to run on July 3, 1993. Since the thirtieth day fell on Sunday, August 1, 1993, appellant had through August 2, 1993, to submit a timely application to the Court. *See* U.S.Vet.App.R. 26(a).

Appellant's application, filed on August 2, 1993, was thus timely.

The Court's ruling respecting the impact of *Schaefer* invalidates the Court's existing practice under Rules 36(b) and 39(a). The en banc Court, contemporaneously with the issuance of this decision, is issuing an order to rectify this situation. The Court notes that such an order is not precluded by or inconsistent with the holding of *Karnas v. Derwinski*, 1 Vet.App. 308, 312–13 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should and we so hold will apply unless Congress provided otherwise or permitted the Secretary … to do otherwise and the Secretary did so"). *Karnas* is not applicable when the change in law as to a particular case or set of cases is mandated by action of the Federal Circuit or the Supreme Court. Were this Court to fail to apply a binding, precedent decision of a superior court, because that ruling was less "favorable to appellant," fundamental notions of judicial review and stare decisis would be rendered meaningless. *See* 38 U.S.C. §§ 7291, 7292 (providing for review of certain decisions of this Court in the Federal Circuit and the Supreme Court).

## D. Prevailing Party Requirement

■ The Secretary concedes that appellant is a "prevailing party" within the meaning of § 2412(d)(1)(A) since she obtained a remand. Under *Schaefer*, the "prevailing party" requirement of the EAJA is satisfied when a remand is obtained since it represents " 'succe[ss] on any significant issue in litigation which achieve[d] some of the benefit … sought in bringing suit.' " *Schaefer*, — U.S. at ——, 113 S.Ct. at 2632 (quoting *Texas Teachers Ass'n*, 489 U.S. at 791–92, 109 S.Ct. at 1493); *see Cook v. Brown*, 6 Vet.App. 226, 236–37 (1994) (relying on *Schaefer*).

The Court notes that, in determining whether a party "prevailed" for purposes of the EAJA, pre–*Schaefer* cases addressed the necessity of a causal relationship between the lawsuit and the relief obtained. *See, e.g., Tucson Medical Ctr. v. Sullivan*, 947 F.2d 971, 982 (D.C.Cir.1991) ("prevailing party" test includes the requirement that " 'the lawsuit must have been a catalytic, necessary, or

substantial factor in attaining the relief' " (citation omitted)); *Petrone v. Secretary of HHS*, 936 F.2d 428, 430–31 (9th Cir.1991) ("prevailing party" status not found because plaintiff "did not win reinstatement [of benefits] in the courtroom; she won because Congress changed the law. '[She] was a fortuitous beneficiary, and serendipity is not a reason for rewarding lawyers' "); *Goodro v. Bowen*, 854 F.2d 313, 315 (8th Cir.1988) ("prevailing party" status not found because " 'even granting that Congress' enactment of the Reform Act was partly a result of the thousands of suits filed by terminated claimants against the Secretary [of HHS],' the link between the individual's lawsuit and Congress' action is 'too tenuous to satisfy the catalyst test' "); *French v. Bowen*, 708 F.Supp. 644, 648 (M.D.Pa.1989) ("prevailing party" status not found because "the matter was remanded to the Secretary [of HHS] prior to the filing of an answer and, consequently, this court never viewed the transcript of the record or any evidence on which the Secretary's original decision was based.... Plaintiff would have been entitled to an administrative redetermination even if this action had never been filed"); *Ware v. Bowen*, 666 F.Supp. 1201, 1203 (N.D.Ill.1987) ("prevailing party" status not found because the remand was mandated, not by legislative action as in *Petrone, Goodro,* and *French,* but by case law which evolved after the filing of the appeal; "[t]he remand ... resulted from a change in the applicable law caused by the decision[ ] of ... the Seventh Circuit ..., not from litigation of the substantive issues raised by the plaintiff before this court").

One key factor, not necessarily obvious from the quoted language of these cases, but present in every case in which "prevailing party" status was denied based on a lack of causation, is that the claimant in each such case had a basis, independent from the lawsuit, for obtaining the relief requested in the lawsuit. Thus, although it is unclear whether lack of causation is still a viable basis, post-*Schaefer*, for defeating "prevailing party" status, the question is not raised by this case. Appellant obtained relief only because she challenged the BVA denial of benefits by filing an appeal in this Court, and only as a result of the Court's substantive determination in that appeal, based upon the record, the parties' pleadings, and the Court's prior decision in *Gregory*. In short, but for appellant's appeal to this Court, unlike the situation in cases such as *Petrone, Goodro, French,* and *Ware,* there existed no independent basis for relief.

## E. Substantial Justification Requirement

■ Attorney fees under the EAJA will be awarded "unless the court finds that the *position of the United States was substantially justified.*" 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Because appellant has "allege[d] that the position of the United States was not substantially justified," as required by the EAJA, § 2412(d)(1)(B), the government has the burden of proving that its position was substantially justified in order to defeat appellant's EAJA application, *see Gavette v. OPM*, 808 F.2d 1456, 1467 (Fed.Cir.1986) (en banc); *see also Essex Electro Engineers, Inc. v. United States*, 757 F.2d 247, 252 (Fed.Cir.1985) (citing, inter alia, *Ellis v. United States*, 711 F.2d 1571 (Fed.Cir.1983)); *Cook*, 6 Vet.App. at 237 (citing cases); H.R.REP. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.C.C.A.N. 4953, 4984, 4989 ("[T]he strong deterrents to contesting Government action require that the burden of proof rest with the Government. This allocation of the burden, in fact, reflects a general tendency to place the burden of proof on the party who has readier access to and knowledge of the facts in question. The committee believes that it is far easier for the Government, which has control of the evidence, to prove the reasonableness of its action than it is for a private party to marshal the facts to prove that the Government was unreasonable").

Prior to the 1985 EAJA amendment, "position of the United States" was interpreted as including only the government's position during the litigation of the challenged government action, i.e., judicial phase. *See, e.g., Essex*, 757 F.2d at 252–53; *Broad Ave. Laundry and Tailoring v. United States*, 693 F.2d 1387, 1390–91 (Fed.Cir.1982). In 1985, Congress clarified its intent, stating that,

when assessing whether to award attorney fees incurred by a party who successfully challenged a governmental action, the entirety of the conduct of the government is to be analyzed, both the government's litigation position and the action or inaction by the agency prior to the litigation. Pub.L. No. 99–80, § 2(b), 99 Stat. 184–185 (codified at 28 U.S.C. § 2412(d)(1)(B) ("[w]hether or not the position of the United States was not substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees … are sought")); Pub.L. No. 99–80, § 2(c)(2)(B), 99 Stat. 185 (codified at 28 U.S.C. § 2412(d)(2)(D) (" 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based")).

The Supreme Court addressed the meaning of "substantially justified" in *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988), and concluded:

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. [Citations omitted].

*See also Cook, supra* (quoting *Underwood* ). The Supreme Court also noted that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Underwood*, 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2.

Factors relevant to the determination of reasonableness were also enunciated by the Federal Circuit in *Essex, supra*, prior to *Underwood*. (Although not directly relevant here, *Underwood* implicitly overruled the holding of the Federal Circuit in *Essex* regarding the standard of appellate review governing the determination of substantial justification.) Although the factors pertained only to the government's litigation position and not to the government's position advanced at the administrative level since the *Essex* case predated the 1985 amendment, they nevertheless provide guidance in an area described as "quintessentially discretionary in nature." *Chiu v. United States*, 948 F.2d 711, 715 n. 4 (Fed.Cir.1991). The Federal Circuit in *Essex* set forth the following guidelines: (1) reasonableness is determined by the totality of circumstances, and not by any single-factor approach; (2) reasonableness "turns on what support in law and fact the government offered in defending its case, and … the merits of the agency decision constitute only one factor in evaluating the justification for the government's litigating position in court," *Essex*, 757 F.2d at 253 (citation omitted); (3) whether the government "drag[ged] its feet," or "cooperated in speedily resolving the litigation," *id.;* and (4) whether the government "departed from established policy in such a way as to single out a particular private party," *id.* at 254 (citation omitted).

■ By merging the statutory and *Underwood–Gavette–Essex* language for purposes of developing the most current framework within which to determine "substantial justification" with respect to the VA, the following test emerges: the VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court. *Cf. Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir.1993), *cert. denied,* —— U.S. ——,

114 S.Ct. 182, 126 L.Ed.2d 141 (1993) (court noted that "a more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's 'position' in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not"); *Perales v. Casillas,* 950 F.2d 1066, 1072–73 (5th Cir.1992) (court rejected the INS position that because "plaintiffs were victorious on only the insignificant portions of their claim ...., viewing the case as an 'inclusive whole,' plaintiffs are entitled to no [EAJA] fees," and remanded for reevaluation of the substantial justification issue in light of the "diminished," although still "significant," degree of success of the plaintiffs on appeal); *Chiu,* 948 F.2d at 715, 715 n. 4 (court stated that "trial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact," but noted in a footnote that "whether the government was substantially justified overall where in litigation it depended on the ground of lack of jurisdiction and a party prevails on a substantive aspect of the agency's action which gave rise to the litigation necessarily involves an apples to oranges comparison. It is for the trial court to weigh each position taken and conclude which way the scale tips").

■ Two special circumstances may also have a bearing upon the reasonableness of the litigation position of the VA, and of the action or inaction by the VA at the administrative level. One is the evolution of VA benefits law since the creation of this Court that has often resulted in new, different, or more stringent requirements for adjudication. The second is that some cases before this Court are ones of first impression involving good faith arguments of the government that are eventually rejected by the Court. *Cf. Roanoke River,* 991 F.2d at 139 (even with respect to cases which are not ones of first impression, the Fourth Circuit was mindful that "[w]hile the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss

when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong"); *Pottgieser v. Kizer,* 906 F.2d 1319, 1324 (9th Cir.1990) (court concluded that "[i]f the statutory scheme to be considered is complex, or if the analysis required, even for a straightforward statute, is 'exceptional,' then fees may be denied") (citations omitted).

■ After thoroughly reviewing the record on appeal, the filings of the parties, and the contentions advanced at oral argument, and applying the preceding two paragraphs here, the Court finds that the only basis for a determination of lack of substantial justification arises from the VA's use of appellant's conduct following her separation from her husband to deny her status as a "surviving spouse." Contrary to the BVA's determination, we held in *Gregory* that neither 38 U.S.C. § 101(3) nor 38 C.F.R. § 3.53(a) (the first sentence of which we invalidated for not providing for a determination regarding the veteran's fault in the separation) permitted post-separation conduct in and of itself to be a basis for denial of "surviving spouse" status. (On the other hand, such post-separation conduct can still bear on whether the spouse was at fault at the time of separation.) While the BVA incorrectly applied the law and erred in so doing, we are not oblivious to 38 C.F.R. § 3.53(b), quoted in part I., *supra.* It is true that this provision is a shield to be used by a spouse, rather than a sword to be used against a spouse, in cases of separation by mutual consent not involving misconduct. Nevertheless, the VA may have reasonably, although incorrectly, inferred from the use of the word "desert" in § 3.53(b), a need for continuing faultless conduct after separation in cases not involving separation by mutual consent. Cognizant of the fact that the statutory and regulatory framework presents a "confusing tapestry," *Hatlestad v. Derwinski,* 1 Vet.App. 164, 167 (1991); *Hyder v. Derwinski,* 1 Vet.App. 221, 224 (1991), in which the meaning is not easily discerned, the BVA's misinterpretation appears to be no more than a reasonable mistake. *See Pottgieser, supra; cf. Thompson v. Sullivan,* 980 F.2d 280, 282–83 (4th Cir.1992) (government's position was not "substantially justified" where the Secretary argued contrary

**304**

to, and the agency misapplied, "well-established law" of the United States Court of Appeals for the Fourth Circuit regarding the proper method to evaluate subjective complaints of pain); *Salmi v. Secretary of HHS,* 712 F.Supp. 566, 569–70 (W.D.Mich.1989) ("substantial justification" not found where "[n]o reasonable person could be satisfied that the Secretary was justified . . . in failing to apply *his own long-standing* de minimis construction of the severity requirement") (emphasis of "long-standing" added); *Mager v. Heckler,* 621 F.Supp. 1009, 1012 (D.Colo. 1985) (same with respect to incorrectly applying the Secretary's own regulations *and* ignoring "Tenth Circuit law with regard to consideration of pain") (emphasis added); *McKenzie v. Heckler,* 589 F.Supp. 1152, 1163 (N.D.Ill.1984) (same as *Salmi* with respect to severity regulation). In addition, the VA initiated negotiations with appellant to remand the matter here immediately following the issuance of the Court's decision in *Gregory.* Finally, as to special circumstances to be considered, at a minimum, the issuance of *Gregory* imposed on the VA a requirement for precision in dealing with post-separation conduct that appears from the records and filings in *Gregory* and *Stillwell* not to have been previously applicable. (The records and filings of *Gregory* and *Stillwell* are devoid of any actual information as to whether there was any pre-*Gregory* VA policy regarding post-separation conduct.) *Stillwell* was a case of first impression until the issuance of *Gregory* and the government's actions in *Stillwell,* subsequent to such issuance, were consistent with the Court's holding in *Gregory.* Based on this analysis, the Court holds that the VA's use of appellant's post-separation conduct to deny her status as a surviving spouse at the administrative level and to support that denial before the Court prior to the issuance of *Gregory* was reasonable in law and fact based upon the totality of the circumstances as reflected in the record on appeal and the filings of the parties before the Court. As a consequence, the Court denies appellant's EAJA application including supplements.