# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-934

PAULINO BAC-A, APPELLANT,

V.

TOGO D. WEST,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Decided  February 10, 2000  )

*Thomas D. Hughes, IV,* of Alexandria, VA, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin,* Assistant General Counsel; *Carolyn F. Washington,* Deputy Assistant General Counsel; and *Ari Nazarov,* of Washington DC, were on the pleadings for the appellee.

Before NEBEKER, *Chief Judge,* and KRAMER and IVERS, *Judges*.

NEBEKER, *Chief Judge*: Before the Court is the application of the appellant, Paulino Bac-A, for an award of reasonable attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  The Secretary opposes the application on the sole ground that his position was substantially justified.  The Court will grant the appellant's application.

## I.  FACTS

On April 23, 1996, the Board of Veterans' Appeals (Board or BVA) considered the appellant's claims of entitlement to service connection for post-traumatic encephalopathy and entitlement to a compensable rating for scars resulting from a shell wound to the head and neck. Record (R.) at 420-23.  In its decision the Board held that "further development of the evidence is required," and remanded the claims to the regional office (RO) with five instructions.  *Id.* Specifically, the RO was directed to:

1. Obtain copies of records, pertaining to treatment of post-traumatic encephalopathy, from Dr. Lloren . . . and from any other health-care provider the veteran identifies.

2. Schedule the veteran for a VA neurology examination to determine whether post-traumatic encephalopathy is present and, if so, whether the disability is related to service-connected shell fragment wound scars of the head and neck.

3. Schedule the veteran for a VA orthopedic examination to determine the nature and extent of his service-connected shell fragment wound scars. . . . The examiner must describe each scar and identify the affected Muscle Group. (Color photographs of the scars should be taken and they should be associated with the examiner's report.) A copy of this remand and the claims folder must be made available to and reviewed by the examiner prior to the examination.

4. The RO should review the examination reports and determine if they are adequate for rating purposes and in compliance with this remand. If not, they must be returned for corrective action.

5. Thereafter, the RO should adjudicate the issues on appeal.

*Id.* (emphasis in original). The appellant was afforded a VA examination (R. at 447-61), and the RO subsequently issued a Supplemental Statement of the Case, continuing the 0% evaluation of his scars, and denying service connection for post-traumatic encephalopathy (R. at 474-76). A Board decision dated July 22, 1997, followed, which likewise denied an increased rating for the appellant's scars, and denied service connection for post-traumatic encephalopathy. R. at 1-12.

The veteran appealed the July 1997 BVA decision to this Court and obtained counsel through the Veterans Consortium Pro Bono Program. On March 30, 1999, the parties filed a joint motion seeking an order vacating the July 22, 1997, BVA decision and remanding the case to the Board for readjudication. The joint motion cites *Stegall v. West*, 11 Vet.App. 268, 271 (1998), and its holding that a remand by the Board confers on a claimant a right to compliance with remand orders as a matter of law. The joint motion states: "Although there was an examination conducted, there was only partial compliance with the remand order [of April 1996]. Specifically, there i[s] no indication that the claims folder was made available and reviewed by the examiner prior to the examination . . . [and] no discussion of the nature and extent of the [a]ppellant's service-connected shell fragment wound scars." The Clerk of the Court granted the motion on April 1, 1999. On April 29, 1999, the

appellant filed a timely application for attorney fees and costs under EAJA in the amount of $4,706.25.

The appellant asserts in his EAJA application, and in his reply to the Secretary's response to the application, that the Secretary's position was not substantially justified at the administrative level. The Secretary opposes the appellant's EAJA application solely on the contention that the Secretary's position at the administrative stage of the proceedings was substantially justified in light of the state of the law at the time of the 1997 BVA decision.

## II. ANALYSIS

The EAJA provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The burden of demonstrating substantial justification rests with the Secretary, who must show substantial justification for both his administrative and litigation positions. *Locher v. Brown,* 9 Vet.App. 535, 537 (1996); *Olney v. Brown*, 7 Vet.App. 160, 162 (1994). The Secretary's administrative and litigation positions are substantially justified if he establishes that each has a reasonable basis in both law and fact, based upon the totality of the circumstances. *Pierre v. West*, 12 Vet.App. 92, 95 (1998); *Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994).

The Secretary contends that his position was substantially justified because the exclusive basis for the joint remand request was the Court's holding in *Stegall, supra,* a decision issued after the BVA decision in this case. Secretary's Response (Response) at 3-4; *see also Stephens v. West*, 12 Vet.App. 115 (1999) (Secretary substantially justified when catalyst for remand was change in law occurring subsequent to BVA decision). The facts in *Stegall* showed a failure by VA to comply with the directions of a BVA remand order, including conducting an adequate medical examination. 11 Vet.App. at 270-71. The Court held that remand was necessary because the medical examination relied upon by the BVA was inadequate, and because the RO failed to comply with the prior Board

3

remand. *Id.* The Court stated, "[A] remand by this Court or the Board imposes upon the [Secretary] a concomitant duty to ensure compliance with the terms of the remand." *Id*.; *cf. Dyment v. West*, 13 Vet.App. 141, 146-47 (1999) (no *Stegall* violation when examiner "more than substantially complied with the Board's remand order."). In this case, the Secretary asserts that his administrative position was not unreasonable, based on the totality of the circumstances, because, "The remand ordered by the Court in the instant case was necessitated by *Stegall v. West*, which recognized for the first time that claimants are entitled, as a matter of law, to compliance with the Board's remand order." Response at 4.

To determine whether an award of EAJA fees is appropriate in a given case, the Court must first determine what the reason for the remand was. *See Olney, supra.* We therefore look to the language of the remand order, and, in this case, to the language of the joint motion, for guidance. *See Stephens, supra.* Here, the parties quoted the wording and holding of *Stegall*. The Court disagrees with the Secretary's argument that *Stegall* recognized, for the first time, a veteran's entitlement to compliance with a prior remand order. While *Stegall* clarified the state of the law with respect to compliance with Board remands, prior to its issuance there was ample regulatory language and case law requiring the Board to assure that its adjudication was undertaken only after the compilation of an adequate record. *See* 38 C.F.R. §§ 4.2 (1999) ("[I]t is incumbent upon the rating board to return [a] report as inadequate for evaluation purposes [if it does not contain sufficient detail]"), 19.9 (1999) ("If further evidence or clarification of the evidence . . . is essential for a proper appellate decision . . . the Board shall remand the case to the agency of original jurisdiction, specifying the action to be undertaken"); *Hicks v. Brown*, 8 Vet.App. 417 (1995) (relying on regulations and case law requiring adequate medical examination prior to adjudication of claim, Court remanded claim that BVA had originally remanded for adequate examination, but then had adjudicated following what Secretary conceded was inadequate examination); *Ardison v. Brown*, 6 Vet.App. 405 (1994) (inadequate examination frustrates judicial review); *Voyles v. Brown*, 5 Vet.App. 451 (1993) (remanding when examination relied on by BVA failed to discuss impact of pain on functional loss); *Green v. Derwinski*, 1 Vet.App. 121 (1991) (where claim is well grounded, Board must seek conduct of thorough, contemporaneous examination). Accordingly, the Court holds that *Stegall* did not constitute a "change in law" which would, in essence, insulate the Secretary from

4

paying EAJA fees in a situation such as this, where as conceded the actions of VA at the administrative stage of the proceedings failed to comply with existing regulations and case law. *Cf. Olney*, *supra* (no EAJA fees awarded when catalyst for remand was law change). Because the Secretary has not met his burden of demonstrating the reasonableness of his administrative position, *see Stillwell,* 6 Vet.App. at 302, the award of EAJA fees is appropriate in this matter.

If the Secretary's argument were given credence, it would inexorably give rise to the question of how the laws affecting veterans' benefits can be administered absent the rule of law. The Court finds it quite incomprehensible that the Secretary would take a position in this Court that, prior to the decision in *Stegall*, his subordinates were free to ignore some or all Board remand directives. Much injustice and delay in claims adjudication is caused by a lack of discipline and a proper chain of command within VA. This case is not an isolated instance. It is yet another example of a long apparent need for clear command structure.

### III. CONCLUSION

The Court finds that the Secretary has not demonstrated the reasonableness of his administrative position, and therefore has not carried his burden of showing substantial justification for it. Accordingly, the Court grants the appellant's April 29, 1999, application for attorney fees and expenses, subject to recalculation based on supplemental documentation to be submitted by the appellant regarding time spent on the litigation over entitlement to fees.

APPLICATION GRANTED.