# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99- 364

HAROLD E. CULLENS, JR., APPELLANT,

V.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Argued September 13, 2000          Decided    January 17, 2001  )

*Andrew J. Waghorn*, of Bowie, Maryland, for the appellant.

*R. Randall Campbell,* Principal Deputy Assistant General Counsel, with whom *Leigh A. Bradley*, General Counsel; and *Ron Garvin*, Assistant General Counsel, were on the pleadings,  all of Washington, D.C., for the appellee.

*Kenneth M. Carpenter*, of Topeka, Kansas, for the National Organization of Veterans' Advocates as amicus curiae.

Before KRAMER, *Chief Judge*, and FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, *Judges.*

FARLEY, *Judge*, filed the opinion of the Court.  FARLEY, *Judge*, filed a concurring opinion in which IVERS, *Judge*, joined.  KRAMER, *Chief Judge*, and STEINBERG, *Judge*, each filed separate concurring opinions.  HOLDAWAY, *Judge*, filed a dissenting opinion in which GREENE, *Judge*, joined. GREENE, *Judge*, filed a dissenting opinion in which HOLDAWAY, *Judge*, joined.

FARLEY, *Judge*: Before the Court is the appellant's application, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for attorney fees and expenses in the amount of $7,417.76.  The Secretary has filed a response opposing the granting of fees and the appellant has filed a reply to the response.  For the reasons that follow, the Court will grant the appellant's application.

## I. Background

The appellant filed an appeal from a November 4, 1998, decision of the Board of Veterans' Appeals (BVA or Board) denying his claim for dependents' educational assistance benefits for educational courses taken from September 9, 1992, to April 13, 1994. In October 1999, prior to the filing of a record on appeal, the parties filed a Joint Motion to Dismiss (Motion) which stated:

> The terms upon which the parties agree this appeal is to be dismissed are contained in the attached Stipulated Agreement. . . . The parties have resolved, to their mutual satisfaction, the issues raised by this appeal and aver that . . . (2) this is not a confession of error, by the Secretary, under the provisions of U.S. VET. APP. R. 5 ["The Court may suspend proceedings after an appeal has been filed . . . by motion of the Secretary for reasons of confession of error"]; and (3) this agreement disposes of the case on appeal.

Motion at 1-2. The attached Stipulated Agreement (Agreement) provided:

> 1. [The Secretary] agrees to award dependents' educational assistance benefits for courses taken during the period from September 9, 1992, to May 21, 1993, and from September 9, 1973 [sic] to April 13, 1994, pursuant to 38 C.F.R. § 21.4131 (1999).
>
> . . . .
>
> 3. [The Secretary] does not admit that any error was committed by the Department of Veterans Affairs or any of its employees in the adjudication of the claim which is the subject of this appeal.
>
> 4. Appellant agrees that his pending appeal in the United States Court of Appeals for Veterans Claims, U.S. Vet. App. No. 99-364, shall be dismissed, with prejudice, as to all issues addressed by the BVA in its November 4, 1998, decision following execution of this agreement.
>
> 5. The parties agree that this agreement is entered into for the purpose of avoiding further litigation and the costs related thereto. Both parties agree that the settlement is based on the unique facts of this case and in no way should be interpreted as binding precedent for the disposition of future cases.

Agreement at 1.

Subsequent to the filing of the Motion, the Clerk of the Court, on behalf of the Court, granted the Motion in an order of dismissal dated October 12, 1999, which stated:

> The parties have moved jointly to dismiss this appeal on terms agreed upon. See Rule 42 of the Court's Rules of Practice and Procedure. It is
>
> ORDERED that the motion is granted and this appeal is dismissed. Under Rule 41(b) ["An order on consent dismissing or remanding a case will also constitute the mandate"], this order is the mandate of the Court.

2

The appellant then filed an application with the Court for an award of attorney fees and expenses, under EAJA, for work done on his behalf in the bringing of the appeal to this Court and in obtaining the settlement and dismissal of the appeal. Application (Appl.) at 7.

## II. Analysis

The Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). In order for the Court to have jurisdiction over an EAJA application it must be filed within the 30-day period set forth in 28 U.S.C. § 2412(d)(1)(B). In order to be eligible for an EAJA award, the application must contain: (1) a showing that the applicant is a prevailing party within the meaning of EAJA; (2) an assertion that the applicant is a party eligible for an award under EAJA because his or her net worth does not exceed two million dollars; (3) an assertion that the position of the Secretary at the administrative level or in litigation was not substantially justified; and (4) an itemized statement of the fees and expenses sought, supported by an affidavit from the applicant's counsel. *See* 28 U.S.C. § 2412(d); *Chesser v. West*, 11 Vet.App. 497, 499 (1998); *Bazalo v. Brown*, 9 Vet.App. 304, 308 (1996) (en banc), *rev'd on other grounds sub nom. Bazalo v. West,* 150 F.3d 1380, 1384 (Fed. Cir. 1998).

The appellant has met the jurisdictional prerequisites of EAJA in that he filed an application within the 30-day time limit. *See Bazalo*, 150 F.3d at 1383. In terms of the appellant's eligibility for an award, the Secretary does not contest the appellant's status as a prevailing party, and the Court agrees that pursuant to the terms of the settlement, the appellant is a prevailing party. *See Maher v. Gagne*, 448 U.S. 122, 129 (1980) (prevailing party status may be established by the procurement of a favorable settlement); *see also Cervantez v. Whitfield*, 776 F.2d 556, 562 (5th Cir. 1985) (when comparing the claims raised in the complaint with the relief obtained in the settlement, if the plaintiff is found to be a clear "winner," prevailing party status is established); *Heeren v. Jamestown*, 817 F.Supp.1374, 1376 (U.S.D.C., W.D.K. 1992) (prevailing party status is established in a settled case where "the lawsuit acted as a catalyst in prompting the defendant to take the desired action"). Comparing the relief sought in this matter and the relief obtained through settlement, we find that the appellant obtained complete success in his desired objective on appeal; i.e., he was awarded *all* of the benefits previously denied. Thus, we find that the appellant was the "clear winner" in the

3

underlying matter. *See Cervantez, supra.* In addition, the Agreement provided for the award of benefits based upon a regulation that became effective after the date of the November 1998 BVA decision and indicated that it was entered into to avoid further litigation. *See* Agreement at 1. These factors, conceded by both parties, clearly establish that the appellant's "lawsuit," or appeal, was a necessary step in bringing about the result desired, and that the Secretary did not act gratuitously in settling this matter in the appellant's favor. *See Heeren, supra*; *see also, e.g., Citizens Coalition for Block Grant Compliance v. Euclid*, 717 F.2d 964 (6th Cir. 1983). Therefore, we find that the appellant is a prevailing party pursuant to EAJA.

The Secretary also concedes that the appellant is a party eligible for an award under EAJA, and does not contend that special circumstances exist that would make an EAJA award unjust or that the hours claimed or hourly rate sought are unreasonable. The Secretary argues, however, that payment of attorney fees and expenses is barred because his position was substantially justified.

## A. Substantial Justification

Once an appellant has alleged a lack of substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified in its administrative and litigation positions. *See Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *Bazalo*, 9 Vet.App. at 309. The Secretary argues that the citation to the 1999 amended version of 38 C.F.R. § 21.4131 in the Stipulated Agreement, which reflected a regulatory change in law, was the sole catalyst for the settlement. The appellant argues that the Secretary's position at the administrative level was not substantially justified and that the errors in the Board's decision would have warranted reversal regardless of the subsequent regulatory change in law. In support of his position, the appellant has presented a copy of a draft motion for reversal prepared by his attorney and forwarded to counsel for the Secretary at the early stages of settlement negotiations. The Secretary admits that this document was sent to counsel for the Secretary, but urges this Court to limit its inquiry concerning substantial justification to the record created in this Court, as it does with respect to the adjudication of EAJA applications in cases that have been remanded. *See Jackson v. West*, 12 Vet.App. 422, 426 (1999) (holding that the Court cannot consider in its determination regarding substantial justification any allegations of error not contained in the Court's remand order); *see also Rhodan v. West*, 12 Vet.App. 55, 58 (1998); *Locher*

4

*v. Brown*, 9 Vet.App. 535 (1996); *Dillon v. Brown*, 8 Vet.App. 165 (1995); *Olney v. Brown*, 7 Vet.App. 160 (1994).

This Court has not previously addressed what evidence is to be reviewed in the determination of substantial justification in settled cases. However, in *Pierce v. Underwood,* 487 U.S. 552 (1988), the Supreme Court specifically refused to limit the factors that a court can consider in making a substantial justification determination in a case that had been settled:

> We reach, at last, the merits of whether the District Court abused its discretion in finding that the Government's position was not "substantially justified." Both parties argue that for purposes of this inquiry courts should rely on "objective indicia" such as the terms of a settlement agreement, the stage in the proceedings at which the merits were decided, and the views of other courts on the merits. This, they suggest, can avoid the time-consuming and possibly inexact process of assessing the strength of the Government's position. While we do not disagree that objective indicia can be relevant, we do not think they provide a conclusive answer, in either direction, for the present case.
>
> Respondents contend that the lack of substantial justification for the Government's position was demonstrated by its willingness to settle the litigation on unfavorable terms. Other factors, however, might explain the settlement equally well--for example, a change in substantive policy instituted by a new administration. The unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements.

487 U.S. at 568.

Consistent with the Supreme Court's holding in *Pierce*, this Court established the following standard to determine whether the position of the Secretary was substantially justified:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994). "[R]easonableness is determined by the totality of circumstances, and not by any single-factor approach." *Id*.

At oral argument, the Secretary pointed to the language of EAJA in support of his position that the Court is authorized to look only to the parties' submissions before this Court during the

substantive stage of the proceeding in determining whether the United States' administrative or litigation position was substantially justified. Section 2412(d)(1)(B), title 28, U.S. Code, provides, in pertinent part, "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (*including the record with respect to the action or failure to act by the agency upon which the civil action is based*) which is made in the civil action for which fees and other expenses are sought." (Emphasis added.) Focusing selectively on the language that the determination shall be made "on the basis of the record . . .which is made in the civil action for which fees and other expenses are sought," the Secretary took the position at oral argument that this language conclusively supported his position that this Court is precluded from reviewing evidence not developed in the action *before this Court*. It is not surprising that the Secretary offered no caselaw supporting his interpretation of that language, or that the Court could find no such precedent. That subsection specifically states that the "record" includes "the record with respect to the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(1)(B). We find that the plain meaning of that language necessarily includes the record developed at the Board of Veterans Appeals and the regional office (RO) with respect to the claim appealed to this Court. Moreover, this reading of the statute is consistent with the Supreme Court's mandate that a court must look beyond the terms of a settlement agreement in considering the issue of substantial justification. *Pierce*, 487 U.S. at 568.

The logic of this conclusion is inescapable when one considers the context in which settlements are negotiated. When an appellant alleges two or more errors in a BVA decision denying a claim, and the Secretary agrees that the Board did err in at least one respect that would warrant a settlement, continued pursuit of the second allegation of error often becomes unnecessary. *Cf. Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case."); *see also Zarycki v. Brown*, 6 Vet.App. 91, 101 (1993) ('[I]n view of the need for remand for readjudication, there is no need for the Court to address [the appellant's additional allegations of error in the BVA decision] at this time."); *Gaines v. West*, 11 Vet.App. 353, 360 (1998) (noting that, in light of the errors in the BVA decision requiring remand, there was no

6

need for the Court to address the appellant's additional arguments). Why then would either party waste their own time and effort, not to mention judicial resources, pursuing an issue if a settlement agreement has already been reached? If we were to restrict review to the parties' settlement agreement, the only answer would be an unacceptable one: to ensure (or prevent) an award of EAJA fees.

In a case such as this, where the parties have agreed to a settlement, there is simply no reason for the parties to negotiate, agree to, and present to the Court all possible reasons for settlement. All that is relevant to the Court is that the parties have reached a settlement agreement. *See Hines v. Brown*, 7 Vet.App. 309, 311 (1994) ("When the parties before the Court have reached a settlement, Court Rule 42 requires dismissal of the claim because a case or controversy no longer exists"); *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order) (motion to dismiss predicated on a settlement agreement requires Rule 42 dismissal because "[w]hen there is no case or controversy, or when a once live case or controversy becomes moot, the Court lacks jurisdiction"). To have entitlement to an EAJA award hinge solely upon whether or not an allegation of error is contained in a settlement agreement or a court dismissal order would be to discourage or prevent settlements and invite protracted and prolonged litigation. As policy and practice, such a result would be inconsistent with *Pierce*, 487 U.S. at 568. The reason the parties have agreed to settle a particular matter, whether stated or unstated, does not necessarily define the limits of a court's inquiry into allegations that the administrative or litigation position of the United States was not substantially justified. *See Pierce, supra*.

B. Entitlement to Fees

There are three predicate requirements to the Court's granting an EAJA application that are pertinent in this case: (1) The Court must find that the party opposing the United States is a "prevailing party"; (2) there must be an allegation by the appellant that the government's position was not substantially justified and there must be no Court finding to the contrary; and (3) there must be no Court finding that there are circumstances that would make an award against the government unjust. *See Elcyzyn v. Brown*, 7 Vet.App. 170, 174 (1994). A court's finding that each of these predicate requirements has been met "operates as a one-time threshold for fee eligibility." *Commissioner v. Jean*, 496 U.S. 154, 160 (1990). Once the claimant crosses this statutory threshold,

7

"[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In making the threshold determinations as to statutory entitlement, the Court may, indeed must, consider allegations that the Secretary's position was not substantially justified at the administrative level and/or during litigation. As noted above, such allegations, when made, shift to the Secretary the burden of proving that his administrative and litigation positions were substantially justified. *See Locher and Bazalo*, both *supra*. In determining whether the Secretary has met this burden, the Court will follow *Stillwell*:

> The Supreme Court also noted that "a position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Underwood*, 487 U.S. at 566 n.2.
> . . . .
> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

6 Vet.App. 291, 302 (1994).

The appellant concedes that the Secretary's position at the litigation phase of this proceeding was substantially justified, but has asserted that his position at the administrative level was not. The appellant argues that the Secretary's position at the administrative level was not substantially justified because the regulation relied upon by the Board (38 C.F.R. § 21.4131 (1997)) was inconsistent with the statutory framework and Court precedent invalidating a similar regulation. *See* 38 U.S.C.§ 5113(a)*; Bernier v. Brown*, 7 Vet.App. 434, 437-38 (1995) (invalidating a regulation denying retroactive vocational rehabilitation program benefits to veterans who received benefits under another VA education or training program during any period for which retroactive benefits were sought; 38 C.F.R. § 21.282(b)(2)(ii) (1994)). The appellant also argues that the Secretary's position was not substantially justified because the Board failed to address whether the appellant had shown good cause to excuse delay in submitting a complete claim for educational assistance benefits. *See* 38 C.F.R. § 21.3032(b)(3) (1997).

8

The Secretary maintains that his position at the administrative level was substantially justified because the Board's denial was based on then existing and controlling regulations, and that he entered into the Agreement solely because of a change in law (*see* 64 Fed. Reg. 23772 (May 4, 1999), codified as 38 C.F.R. § 21.4131 (effective July 1999)) subsequent to the issuance of the Board decision denying the appellant entitlement to benefits. *Compare* 38 C.F.R. § 21.4131 (1998) *with* 38 C.F.R. § 21.4131 (1999). The Secretary's response to the appellant's EAJA application defended the Board's reliance upon then current law, but did not address whether the BVA opinion was deficient in any other ways. At oral argument, the Secretary made much of the fact that the appellant first articulated in his reply to the Secretary's response to his EAJA application his argument that the Secretary's position was not substantially justified because of the Board's failure to address the "good cause" provision of 38 C.F.R. § 21.3032(b)(3). The Court notes, however, that the appellant's obligation in his initial EAJA application is merely to *allege* that the position of the United States was not substantially justified. *See Bazalo*, 150 F.3d 1350. After the appellant makes such an allegation, the burden to prove substantial justification shifts to and remains with the Secretary. *See Bazalo*, 9 Vet.App. at 309. Moreover, the Secretary admitted at oral argument that he was aware of the appellant's position that such an error was committed by the Board. Both parties represented to the Court at oral argument that, prior to entering into the settlement agreement, the appellant's attorney had forwarded a draft motion for reversal that set forth, inter alia, the appellant's argument regarding the "good cause" provision of 38 C.F.R. § 21.3032(b)(3). Additionally, the Court notes that had the Secretary felt that he had been denied the opportunity to respond to the appellant's allegations, he had ample opportunity to seek leave of the Court to file a supplemental memorandum.

While the merits of this claim was pending before this Court, there were no pleadings filed, no joint motions for remand, and no Court remand. The matter was resolved by settlement, a settlement that provided the appellant all of the benefits he sought on appeal. Although there was the Joint Motion to Dismiss, with an attached Settlement Agreement, and a Court order dismissing the case pursuant to the Motion, none of these documents specifies the bases for the settlement, other than a statement that the Agreement was entered into "for the purpose of avoiding further litigation and the costs related thereto," which is standard boilerplate incorporated in most settlement agreements. In addition, as is also typical in settlement agreements of this kind, the Motion

9

specifically states that the Secretary does not confess any error. Thus, if we were compelled to look only to the settlement documents filed with this Court, we might have found that the Secretary had met his burden of establishing that the position of the government was substantially justified, because there would be no evidence before this Court to the contrary. However, in light of the Supreme Court's decision in *Pierce, supra*, we are not so compelled. In fact, we can, and must, look beyond the Motion, Agreement, and Court order to determine whether the position of the United States at the administrative level was substantially justified.

The Court agrees with the Secretary's contention that the Board's reliance upon the provision of 38 C.F.R. § 21.4131 prohibiting the payment of benefits prior to one year from the date of the receipt of the enrollment certification, as it was in effect at the time the Board rended its decision, was substantially justified. *See, e.g., Clemmons v. West*, 12 Vet.App. 245, 247 (1999). However, that does not end our inquiry. The appellant has argued specifically that the Board erred in not addressing the potential applicability of the "good cause" provision of 38 C.F.R. § 21.3032(b)(3) to the appellant's claim. The Secretary has not addressed that contention.

The Board's November 4, 1998, decision recites the following findings of fact in their entirety:

> 1. All evidence necessary for an equitable distribution of the veteran's claim has been developed.
> 2. The appellant submitted a claim for dependents' educational assistance for courses taken from September 4, 1991, to May 22, 1992, which was received on February 24, 1992. The enrollment certification completed by the appellant's school for that period was received on the same day.
> 3. On April 13, 1995, and April 24, 1995, VA received electronically enrollment certifications for courses taken by the appellant from November 19, 1991, to May 19, 1995, which included enrollment certifications for courses taken during the period from September 9, 1992, to April 13, 1994.

*Harold E. Cullens*, BVA 96-39766, at 3 (Nov. 4, 1998). As noted by the Board, at the time of its decision 38 C.F.R. § 21.4131 provided that the commencement date of an award of educational assistance benefits shall be the latest of the following dates:

> (1) Date certified by school or establishment under paragraph (b) or (c) of this section.
> (2) Date 1 year prior to date of receipt of the application or enrollment certification, whichever is later. . . .

10

(3) The later of the following:
(i) The effective date of the approval of the course, or
(ii) One year before the date VA receives the approval notice.
(4) Date of reopened application under paragraph (d) of this subsection.

38 C.F.R. § 21.4131(a) (1997).

The Board acknowledged that the appellant had been awarded educational assistance for courses taken prior to September 9, 1992 (*Cullens*, BVA 96-39766, at 5) (i.e., for courses taken from September 4, 1991, to May 22, 1992). We must presume from the Board's recitation of facts noting only one application date, i.e., February 24, 1992, and the fact that the appellant was awarded benefits for courses taken from September 1991 to May 1992, that the RO's November 1995 award was based upon the appellant's February 24, 1992, application. Had the submission of additional enrollment certificates in April 1995 been considered by the RO or the Board as a new or reopened claim for benefits, the earliest possible dates the RO could have awarded benefits to the appellant would have been one year prior to April 1995. Thus, the record before us (and that was before the Board) demonstrates that the appellant had a claim for education benefits pending since February 1992. Because the veteran had failed to continue to submit enrollment certificates between February 1992 and April 1995, his application was not complete. The reason for the appellant's delay in submitting his enrollment certificates is not in dispute: he did not continue to submit enrollment certificates because of a delay by VA in the adjudication of a claim for service connection for the cause of his father's death. The Board noted:

> The Board sympathizes with the appellant's contention that as he was not notified of his entitlement to dependents' educational assistance until January 1995, due to delay by VA, and that he should not have been expected to file forms years before that date, when his entitlement to the benefit had already been denied by VA. However, the Board is not permitted to decide the appellant's claim in equity, and is constrained to follow the express mandate found in the regulations.

*Cullens*, BVA 96-39766, at 5.

However, because the appellant's claim had been pending (or was at least deemed so by the RO), it is reasonable to conclude that the Board should have considered whether the appellant's claim was "incomplete," and thus, whether the time limit in which he was required could have been extended for "good cause shown." *See* 38 C.F.R. § 21.3032(b)(3) (1997) ("When a claim is incomplete, time limits within which a claimant or beneficiary is required to complete the claim

11

through the submission of evidence, documents or other information may be extended for good cause shown."). Even though the appellant had raised what the Board considered equitable arguments, the Board did not discuss whether good cause was shown to justify the extension of the appellant's time to submit his enrollment certificates, or even cite that provision of § 21.3032(b)(3) in its decision. We need not decide today, and express no opinion as to whether the time limit *should* have been extended, that good cause *was shown*, or that, as the appellant contended, § 21.3032(b)(3) was *even applicable* to the appellant's claim. The facts of this case, including VA's delay in adjudicating the service connection claim, certainly give rise to the potential applicability of that subsection and, as the Board acknowledged, the appellant had raised equitable arguments in support of his contention that he should be entitled to benefits for the period between September 1992 and April 1994. Thus, on its face, the Board's decision appears to be lacking an adequate statement of reasons or bases for its rejection of his equitable argument. *See* 38 U.S.C. § § 7104(d); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (Board is required to articulate reasons and bases for its decision sufficient for the claimant to understand the agency's decision and the precise basis for that decision and to facilitate judicial review); *cf. Schroeder v. West*, 212 F.3d 1265 (Fed. Cir. 2000) ("[O]nce a veteran has properly made out a well-grounded claim . . . the agency's duty to assist pursuant to section 5107(a) . . . attaches to the investigation of *all* possible in-service causes of that current disability, including those unknown to the veteran."). Accordingly, we hold that the Secretary has not met his burden, in the EAJA context, of demonstrating that the Board's failure to address these questions was substantially justified.

Before this Court, the appellant argues that § 21.3032(b)(3) --

specifically incorporates what the BVA described as "equitable principles" into the legal framework governing the perfection of claims for education benefits. Yet, inexplicably, the Board determined that it could not even reach the issue of whether [the a]ppellant's delay in submitting the required certificates of school enrollment should be excused. As a result, there is no discussion of the issue for appellate review.

Notwithstanding, [the a]ppellant argues that he established good cause in his notice of disagreement, when he correctly stated that the delay in the submission of the certificates of school enrollment had been caused by the VA's delay in adjudicating the issue of service connection for the cause of the veteran's death. [The a]ppellant also correctly noted that the VA never advised him to keep submitting

12

certificates of school enrollment. The BVA did not contest these matters in its decision. Rather, the Board acknowledged the equities surrounding the case, but denied retroactive benefits for want of a legal basis for awarding such benefits. Now that such a legal basis has been uncovered, Appellant respectfully submits that the Board's decision was not substantially justified.

Reply to Appellee's Response to EAJA Petition, 14-15. The Secretary's response to the appellant's EAJA application discussed neither § 21.3032(b)(3) nor the adequacy of the Board's statement of reasons or bases for its decision.

As noted above, once an appellant has alleged a lack of substantial justification, the Secretary has the burden of proving that VA was substantially justified in its position. *See Locher* and *Bazalo* both *supra*. This Court has held that the position of the United States was not substantially justified at the administrative level where the Board failed to provide an adequate statement of reasons or bases in its decisions. *See, e.g., ZP v. Brown*, 8 Vet.App. 303, 304 (1995); *Elcyzyn*, 7 Vet.App. at 176. The Secretary has offered this Court neither argument nor evidence that the manner in which the Board dealt with this "good cause" argument was substantially justified. Therefore, the Court finds that the Secretary has not met his burden of proving that the position of the United States at the administrative level was substantially justified.

## C. Amount of Fees

As the appellant has crossed the statutory threshold for fee eligibility, we turn now to the determination of the amount of fees to which the appellant is entitled. In *Hensley, supra*, the Supreme Court stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee.

461 U.S. at 435. Pursuant to the terms of the settlement, the Secretary agreed to pay the appellant all of the benefits sought on appeal. The appellant has therefore achieved complete success on the merits of his claim. Although the Court has rejected the appellant's argument that the Board's decision was not substantially justified in its reliance upon the former 38 C.F.R. § 21.4131, in light

13

of *Hensley, supra,* we find no reason to reduce the amount of fees to be awarded. Moreover, the Secretary does not contend that the hours claimed or the hourly rate are unreasonable. Accordingly, the Court will grant the appellant's application in its entirety.

### III. Conclusion

On consideration of the foregoing, the appellant's application for an award of attorney fees and expenses is granted. The Court notes that at oral argument the parties agreed that much of the concerns raised by this matter could be avoided if the parties included the issue of attorney fees and EAJA in their settlement negotiations and agreements. The Court certainly agrees that this would be a prudent course and would further the purpose of conserving judicial resources, provided such negotiations do not place the interests of the attorney against the interests of his client. The Court is encouraged by the parties' representations of a willingness to resolve attorney fee issues in future cases.

FARLEY, *Judge*, with whom IVERS, *Judge*, joins, concurring: The Court today resolves EAJA issues in the context of a settlement agreement entered into by the parties. In the course of the proceedings, the Secretary suggested that the Court follow the practice in settlements that it had adopted with respect to EAJA issues in the context of remands, i.e., that we consider only the limited record before the Court. Although it was not accepted, the Secretary's argument did prompt my review of our caselaw regarding EAJA applications in cases that have been remanded. This review, in turn, led to the conclusion that a course correction is required because the Court has inexplicably and erroneously drifted away from the substantial justification mooring initially set by *Stillwell v. Brown*, 6 Vet.App. 291, 301-04 (1994).

I. The Mooring: *Stillwell* and the "Totality of the Circumstances" Test

In *Stillwell*, this Court established the following standard to determine whether the position of the Secretary was substantially justified:

14

[T]he VA must demonstrate the reasonableness, in law and fact, of the position of the VA in a matter before the Court, and of the action or failure to act by the VA in a matter before the VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

6 Vet.App. at 302. "[R]easonableness is determined by the totality of circumstances, and not by any single-factor approach." *Id*.

This Court's "totality" test is consistent with the Supreme Court's decision in *Pierce v. Underwood,* 487 U.S. 552 (1988), which specifically refused to limit the factors which a court can consider in making a substantial justification determination:

We reach, at last, the merits of whether the District Court abused its discretion in finding that the Government's position was not "substantially justified." Both parties argue that for purposes of this inquiry courts should rely on "objective indicia" such as the terms of a settlement agreement, the stage in the proceedings at which the merits were decided, and the views of other courts on the merits. This, they suggest, can avoid the time-consuming and possibly inexact process of assessing the strength of the Government's position. While we do not disagree that objective indicia can be relevant, we do not think they provide a conclusive answer, in either direction, for the present case.

Respondents contend that the lack of substantial justification for the Government's position was demonstrated by its willingness to settle the litigation on unfavorable terms. Other factors, however, might explain the settlement equally well--for example, a change in substantive policy instituted by a new administration. The unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements.

487 U.S. at 568.

## II. The Drift from "Totality of the Circumstances"

One of the first examples of our "drift" was a decision I wrote, *Olney v. Brown*, 7 Vet.App. 160 (1994), in which the Court held that the Secretary's position at the administrative level was substantially justified because it was consistent with then current law. The Court refused to consider the appellant's argument that the Secretary's position at the administrative level was not substantially justified because of other alleged separate and distinct errors in the Board's decision. The Court

15

stated that, although one of these arguments was perhaps "of interest," its consideration would be premature in that it could be properly raised and resolved on the merits upon remand and it "played little, if any role in the remand". With regard to the second argument, we deemed the appellant to be "raising a smokescreen to cover the fact that this matter was remanded at the request of the parties due to the intervening decision in *Thurber* [*v. Brown,* 5 Vet. App. 119 (1993]." 7 Vet.App. at 163. Although the actual holding does invoke the "totality of the circumstances" standard of *Stillwell*, with 20/20 hindsight it becomes apparent that the drift toward the determination of substantial justification by reference solely to the basis for the remand had begun. *See also Carpenito v. Brown*, 7 Vet.App. 534 (1995) (same author, same result: citing *Olney*, Court refused to consider alleged errors in the BVA's decision not identified in the parties' joint motion for remand).

In *Dillon v. Brown*, the speed of the drift from "totality" increased. 8 Vet.App. 165 (1995). There, because the appellant's fee application contained allegations of errors which were not listed in the joint motion, the Court classified this as an attempt to "have the Court reach back and, in essence, readjudicate the appeal de novo." 8 Vet.App. at 168. The Court noted that "the Supreme Court has admonished [that] '[a] request for attorney's fees should not result in a second major litigation.'" *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Declining "the appellant's invitation to conduct such a 'second major litigation,'" the Court held:

> The fact that the Court's remand order cited only the *Austin* [*v. Brown*, 6 Vet.App. 547 (1994)] error and did not address any other allegations of error establishes that the *Austin* error alone was "the catalyst for the remand." *Olney*[, 7 Vet.App. at 162]. Thus, those arguments were not "relevant, determinative circumstances" that would shed light on the reasonableness of the Secretary's administrative position. *See Bowyer* [*v. Brown*, 7 Vet.App. 549 (1995)]; *Carpenito, supra*.

*Dillon*, 8 Vet.App. at 168; *see also Locher v. Brown*, 9 Vet.App. 535 (1996).

More recently, in *Rhodan v. West*, the Court again refused to consider arguments not included in the joint motions filed in two consolidated cases but this time went so far as to deem such arguments "irrelevant" to a substantial justification determination. 12 Vet.App. 55, 58 (1998). The Court held that "because the Court remanded [Rhodan's] claim based solely upon the reason that the PTSD regulations had changed [the reason cited in the joint motion for remand], it is *irrelevant* whether the Secretary's position on those other issues was substantially justified." *Rhodan*, 12 Vet.App. at 58 (emphasis added); *see also Stephens v. West*, 12 Vet.App. 115 (1999).

16

Shortly thereafter, in *Jackson v. West*, 12 Vet.App. 422, 427 (1999), we held that "it is the Court's order remanding the claim, and consequently the language of the joint motion, upon which an evaluation of the basis for the remand must *focus*." 12 Vet.App. at 427 (emphasis added). Additionally, we stated that where there is a Court remand but no joint motion, "in order to determine 'reasonableness' under the 'totality of the circumstances', [the Court] must *focus* on the Court's remand order and the language of the underlying pleadings, including any remand motions or requests submitted." *Id.* (emphasis added).

> To determine whether the Secretary has demonstrated that his position was "reasonable" during the administrative and litigation stages, the Court looks, respectively, to the "'relevant, determinative circumstances' and to the 'circumstances surrounding the resolution of the dispute.'" *Stephens*[, 12 Vet.App. at 118] (quoting and citing *Dillon*[, 8 Vet.App. at 167-68], *Bowyer*[, 7 Vet.App. at 552-53], and *Carpenito*[, 7 Vet.App. at 536-37]).

*Jackson*, 12 Vet.App. at 426. Although *Jackson's* repetition of the word "focus" would not appear to preclude consideration of other factors as seemingly mandated by the "totality of the circumstances" test of *Stillwell*, additional language appears to have shut that door and limited our review to such material:

> When the Court's remand order provides only one basis for remand and does "not address any other allegations of error", the appellant's additional allegations of BVA error *cannot be considered* to be "'relevant determinative circumstances' that would shed light on the reasonableness of the Secretary's . . . position", . . . but, rather, constitute an impermissible attempt to conduct a "second major litigation" of the merits.

*Id*. (citations omitted) (emphasis added); *see also, e.g., Wisner v. West*, 12 Vet.App. 330, 333 (1999) ("It is clear from the Court's October 2, 1998, remand order that the Court relied solely upon the *Hodge* [*v. West*, 155 F.3d 1356, 1361-64 (Fed. Cir. 1998)] issue. Thus, the Board's not applying those regulations is irrelevant for EAJA 'substantial justification' purposes because that failure was in no way a basis for the Court's remand of the case. . . . Accordingly, the Court cannot find that the Secretary's position at the administrative level in these cases was not substantially justified.").

Thus, we have developed a body of case law holding that, at least in the instance of a remand upon a joint motion, the Court will determine whether the Secretary's position was substantially justified *only* by considering arguments and issues expressly addressed by the parties in their joint

submission and/or in the remand order of the Court. A number of our decisions have cited the need to avoid "a second major litigation" as justification for our refusal to consider additional allegations of error and to go beyond the reason for remand, the joint submissions of the parties, and the remand order. *See, e.g., Dillon* and *Jackson* both *supra.* The avoidance of "a second major litigation" in an EAJA context originated in the Supreme Court's opinion in *Hensley, supra*; however, to the extent that rubric is proffered as prior or post hoc justification for this limitation, it will not bear that weight. As Chief Judge Nebeker amply demonstrated in his concurring opinion in *Jacobsen v. West*: "[T]he avoidance of a 'second major litigation' is desirable when the level of hourly fees is the question, but is merely one factor to be considered, and is overridden by the duty of the adjudicative body that determines the fee to do what is 'reasonable.'" *Jacobsen*, 13 Vet.App. 35, 36 (1999) (Nebeker, C.J., concurring). In fact, the second major litigation being studiously avoided in *Hensley* was *not* the threshold determination of entitlement but the contentious wrangling over the amount of hours and the dollar amount per hour to be awarded. Although the Supreme Court reiterated its "view that a 'request for attorney's fees should not result in a second major litigation'" in *Pierce* (487 U.S. at 562-62 (quoting *Hensley, supra*)), it did so in the context of adopting the "abuse of discretion" standard of review for a district court's determination whether EAJA fees should be awarded. The Supreme Court did not lower or remove the obligation of the court responsible for making the threshold substantial justification determination.

### III. The Need to Re-Anchor our Jurisprudence

Notwithstanding the Supreme Court's guidance and our decision in *Stillwell*, we have avoided our duty to make a determination as to substantial justification based upon the "totality of the circumstances" in EAJA determinations where the substantive claims have been remanded. We have inexplicably concluded that the product of the parties' negotiations during the litigation phase of the claim, e.g., a joint motion for remand, is not only relevant to the justification of the Secretary's position at the administrative stage, but determinative. If the Secretary's position was justified with respect to that issue, we will deign to look no further. Such a decisional template certainly has its advantages in terms of requiring less judicial resources, but it is inconsistent with *Stillwell* and *Pierce*, and support is not readily apparent in existing statutes or jurisprudence from the Supreme

18

Court or the Federal Circuit. Although such joint motions and remand orders certainly can provide guidance to the Court in making "substantial justification" determinations, there is simply no support for the proposition that the analysis *must* end there. In fact, it is clear from the Supreme Court's opinion in *Pierce, supra*, that the analysis *should not* and *cannot* end there. Since the case before us today was settled, not remanded, this is not the case to re-anchor our EAJA remand jurisprudence. However, it has become clear to me that our drift with respect to substantial justification determinations in remanded claims must be corrected in a future case.

KRAMER, *Chief Judge*, concurring: Although I concur in the majority opinion, I write separately to express my disagreement with the views set forth in Judge Farley's concurring statement regarding the appropriate standard for determining whether the Secretary's position was substantially justified in cases where the matter is remanded by the Court.

I do not share Judge Farley's "drift" guilt. In this regard, I note that I authored both *Stillwell v. Brown*, 6 Vet.App. 291 (1994), which set forth the "totality of the circumstances" test, and *Dillon v. Brown*, 8 Vet.App. 165 (1995), which, according to Judge Farley, increased "the speed of the drift" from that test. *Ante* at __, slip op. at 15. In *Dillon*, the Court, after setting forth the "totality of the circumstances" test, found that the Secretary's administrative position was substantially justified with respect to the error that had served as the basis for the remand. *Dillon*, 8 Vet.App. at 167-68. The Court, however, declined to consider whether the Secretary's position at the administrative level was substantially justified with respect to allegations of error that were not addressed in the parties' joint motion for remand or in the Court's remand order. *Id*. at 168. The Court reasoned that such arguments "were not 'relevant, determinative circumstances' that would shed light on the reasonableness of the Secretary's administrative position" (*Id*. at 168 (quoting *Bowyer v. Brown*, 7 Vet.App. 549, 552 (1995)), and that addressing those arguments would amount to an impermissible "'second major litigation'" (*Dillon,* 8 Vet.App. at 168 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Following the reasoning in *Dillon,* the Court has since recognized in numerous opinions that, in determining whether the Secretary's administrative position was substantially justified, the Court will not consider allegations of error that were not addressed in a joint motion for remand or in the

19

Court's remand order or decision. *See, e.g., Jackson v. West* , 12 Vet.App. 422, 427 (1999) (when Court's remand order provides only one basis for remand and does not address any other allegations of error, appellant's additional allegations of error cannot be considered to be relevant, determinative circumstances, but rather constitute impermissible attempt to conduct second major litigation); *Stephens v. West*, 12 Vet.App. 115, 118-19 (1999). In *Jacobsen v. West*, 12 Vet.App. 546, 547-48 (1999), the Court created a narrow exception to the general rule that the Court will focus on the language of any joint motion and the Court's remand order or decision in determining whether the Secretary's administrative position was substantially justified, holding that a lack of substantial justification could also be predicated on an error that the Secretary had conceded in his merits pleadings, even though that error had not been a basis for the Court's remand. *See also Jacobsen*, 12 Vet.App. at 548 (Kramer, J., concurring). For the reasons that follow, I believe that *Dillon* and its progeny represent an appropriate evolution of the Court's EAJA jurisprudence and would reject Judge Farley's unrestricted approach to determining substantial justification with respect to remanded cases.

First, although I agree with the standard set forth in the majority opinion with respect to settled cases, I believe that that standard is not appropriate in cases where there is a Court remand. As to settled cases, under the Court's caselaw, when the Secretary and an appellant enter into a settlement agreement, the case or controversy becomes moot and the Court must dismiss the appeal for lack of jurisdiction. *See Hines v. Brown*, 7 Vet.App. 309, 311 (1994); *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order). In such a circumstance, the Court does not evaluate and adjudicate the arguments or positions of the parties prior to disposition on the merits, but merely dismisses the appeal in accordance with Rule 42 of the Court's Rules of Practice and Procedure. *See Hines* and *Bond*, both *supra*. Thus, in settled cases, unlike in remanded cases, the Court's consideration at the EAJA stage of allegations of error that were not addressed in the Court's dismissal order or in the parties' settlement agreement in order to determine substantial justification would not result in an impermissible "'second major litigation'" of the merits, because there was in actuality no initial merits adjudication. *Dillon,* 8 Vet.App. at 168 (quoting *Hensley* , 461 U.S. at 437).

20

Second, I believe, unlike Judge Farley, that the Supreme Court's admonition that "[a] request for attorney's fees should not result in a second major litigation" (*Hensley*, *supra*) is fully applicable to the Court's determinations with respect to substantial justification under the EAJA. Although Judge Farley correctly notes that the reference in *Hensley* to avoidance of "a second major litigation" was made in the context of reviewing a determination as to the amount of a fee award, nothing in *Hensley* suggests that that principle should be limited to that context. *See Hensley, supra*. Indeed, that principle has been applied by the Supreme Court in reviewing other facets of attorney-fee litigation, including issues regarding substantial justification. In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court, in determining that the United States Court of Appeals for the Ninth Circuit had been correct in applying an "abuse of discretion" standard in reviewing a district court's determination as to substantial justification, stated that deferential review of the substantial-justification determination "will implement our view that a 'request for attorney's fees should not result in a second major litigation.'" *Pierce,* 487 U.S. at 563 (quoting *Hensley*, *supra*). Thereafter, in *Commissioner, INS v. Jean*, 496 U.S. 154, 156 (1990), the Supreme Court addressed "whether a prevailing party is ineligible for fees for the services rendered during [litigation over the fee request] unless the Government's position in the fee litigation itself is not 'substantially justified.'" In rejecting the government's position that the district court, before awarding "fees for fees," must make a separate finding of substantial justification as to the government's position during the litigation over fees, the Supreme Court noted that such a requirement "would multiply litigation" and stated that "'[a] request for attorney's fees should not result in a second major litigation.'" *Jean*, 496 U.S. at 163 (quoting *Hensley, supra*). In view of these cases, which erect barriers to separate determinations regarding substantial justification at different stages of a civil action, I believe that Supreme Court jurisprudence not only does not preclude our reliance on *Hensley's* "second major litigation" concept as a basis for the Court's *Dillon* approach to substantial justification in remanded cases but also that it appears to provide support for such an approach.

Third, I believe that precedential opinions of the United States Court of Appeals for the Federal Circuit (Federal Circuit), by which this Court is bound, also support this approach. In *Keely v. Merit Sys. Protection Bd.*, 793 F.2d 1273 (Fed. Cir. 1986), the petitioner, after having prevailed on the underlying merits and on an appeal with respect to his request for attorney fees, applied for

21

fees and expenses in connection with litigation over his entitlement to attorney fees. *Id*. at 1274-75. The government urged the Federal Circuit to reduce the requested award, arguing, inter alia, that the petitioner had achieved only limited success. *Id*. at 1275. In support of that argument, the government urged the Federal Circuit "to disregard the litigation on the underlying merits, and address solely the [results obtained during the] subsequent litigation for fees." *Id*. In rejecting the government's position, the Federal Circuit stated that it was "disturbed by the [government's] attempt, in analyzing the results obtained, to restrict our focus to the fee dispute. The Supreme Court has cautioned that '[a] request for attorney's fees should not result in a second major litigation.' In our view, adopting the [government's] approach to the results obtained would encourage a second major litigation." *Id*. at 1276 (quoting *Hensley, supra*) (citation omitted). Further, in *Naekel v. Department of Transp.*, *FAA*, 884 F.2d 1378 (Fed. Cir. 1989), the Federal Circuit determined that the government had not shown that its position was substantially justified, stating that, "[a]lthough the government reargues the merits, a 'request for attorney's fees should not result in a second major litigation.'" *Naekel*, 884 F.2d at 1379 (quoting *Hensley, supra*). Thus, not only has the Federal Circuit suggested in *Keely* that, in resolving fee litigation, it will emphasize what occurred during the litigation of the underlying merits, but it also has clearly stated in *Naekel* that merits determinations should not be made during fee litigation and that to do so would constitute an impermissible "second major litigation."

In sum, I believe that both Supreme Court and Federal Circuit precedents support our existing Court precedent that, where at the merits stage the Court has considered the parties' arguments and issued an order or decision remanding the matter, it is the Court's remand order or decision and any joint motions underlying that order or decision (as well as any concessions of error made in the parties' pleadings) that properly should be the focal point of any substantial-justification determination and that any additional allegations of error should not be considered by the Court in determining whether the Secretary's administrative position was substantially justified.

STEINBERG, *Judge*, concurring: I join in the Court's opinion and write separately only because I believe that our dissenting colleagues mischaracterize the majority's action today as

holding that the Board of Veterans' Appeals (Board) "fail[ed] to state adequate reasons or bases for its decision." Dissent (Holdaway, J.), *infra* at __, slip op. at 24. We have not done so.

Although I believe that the majority opinion effectively rebuts those dissenting contentions, it bears repeating that the Court today does ***not*** hold that the Board decision on appeal contained a statement of reasons or bases that was inadequate under 38 U.S.C. § 7104(d)(1). Rather, the Court holds "that the Secretary has not met his burden of proving that the position of the United States at the administrative level was substantially justified." *Ante* at __, slip op. at 13.

Judge Holdaway asserts that "[a]ny opinion of the Court regarding the validity of [the appellant's] allegations of error is completely advisory and premature". *Infra* at __, slip op. at 24. In that connection, he is correct that "[t]he Court has not been briefed on these issues" -- at least not by the Secretary. *Ibid.* The appellant has provided briefing. However, the reason that we have not been fully briefed is because the Secretary failed to respond to the appellant's assertions, even after the Secretary conceded at oral argument that he was aware of them and after he had been given "ample opportunity" to address them. *Ante* at __, slip op. at 9. Because "the Secretary has the burden of proving that [the Department of Veterans Affairs] was substantially justified in its position", the Court today holds that when the Secretary "offer[s] this Court neither argument nor evidence" that his position was substantially justified after the appellant alleges that it was not, that default alone can provide a basis for the Court to grant an application for attorney fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA). *Ante* at __, slip op. at 12-13.

HOLDAWAY, *Judge,* with whom GREENE, *Judge*, joins, *dissenting*: I respectfully dissent with the holding of the majority. This matter was taken before the en banc court to decide what evidence the Court should consider in determining whether the Secretary's position was substantially justified. In the original panel decision, which has since been withdrawn, the majority held that the Court had drifted from the "totality of the circumstances" test set forth by this Court in *Stillwell v. Brown*, 6 Vet.App. 291 (1994). The dissent opined that the Court had not drifted from *Stillwell* but merely evolved into a narrower body of evidence the Court would consider in determining substantial justification. Unfortunately, in debating the intricacies of their theories, both sides lost sight of the facts of this particular case. While such a debate may make an enlightening topic for a

law school class or a law review article, the purpose of an appellate court is much more practical: to apply the law to the facts of the case at hand.

The issue before the Court is whether the appellant is entitled to reimbursement under EAJA. As the majority correctly stated, the Secretary may show, as an affirmative defense, that his positions before this Court and the Board were substantially justified. In my opinion, under any test, whether it be the en banc's majority opinion, the panel's majority opinion, or the panel's dissenting opinion, the Secretary has shown that his position was substantially justified. Here, the Secretary agreed to award benefits based on a change in the law. Whether or not the appellant would have been entitled to benefits but for the change in the law is wholly irrelevant. Any arguments or claims presented under prior law have been dismissed with prejudice. Any opinion of the Court regarding the validity of these allegations of error is completely advisory and premature. The Court has not been briefed on these issues and there is no way to determine how the Court would have decided this case on the merits. The fact of the matter is that the Secretary granted benefits due to a change in the law which, under this Court's case law, makes his position substantially justified, and the appellant's application for EAJA fees must be denied.

Furthermore, the en banc's majority opinion holds that the Board's putative error, for which the EAJA grant is predicated, was failure to state adequate reasons or bases for its decision. In *Elcyzyn v. Brown*, 7 Vet.App. 170 (1994), this Court held that the position of the government was not substantially justified when the Board failed to give adequate reasons or bases for its decision. I do not believe that this case was correctly decided and I believe that this Court missed an opportunity to overrule this decision en banc. No other court in the country awards EAJA fees as liberally as this one. More importantly to the facts of this case, no other federal court awards EAJA fees when an agency fails to appropriately articulate reasons for its administrative decision. For example, in *Stein v. Sullivan*, 966 F.2d 317 (7th Cir. 1992), the U.S. Court of Appeals for the Seventh Circuit remanded the appellant claim for Social Security disability benefits "so that the Secretary [of Health and Human Services] could articulate more completely its assessment of the relevant evidence regarding the onset of Stein's disability." 966 F.2d at 319. After being awarded the benefits sought, the appellant filed for EAJA fees, and was denied in pertinent part by the U.S. District Court for the Northern District of Illinois. On appeal, the Seventh Circuit affirmed the

24

district court's opinion that the Secretary's position was substantially justified even though he had failed to adequately articulate his reasoning for the denial of the appellant's benefits. The Seventh Circuit held:

> While the [district] court recognized the existence of the rule requiring the Secretary to articulate his assessment of the evidence, the district court noted that the level of articulation is far from precise. We agree. The requirement that the ALJ articulate his consideration of the evidence is deliberately flexible.

> That the ALJ failed to meet this articulation requirement in no way necessitates a finding [that] the Secretary's position was not substantially justified. "Substantially justified" does not mean "justified to a high degree," but rather has been said to be satisfied if there is a "genuine dispute," or if reasonable people could differ as to the appropriateness of the contested action. As the district court correctly noted, we did not find in our earlier opinion that the Secretary lacked substantial justification. We held only that there was some contrary evidence that the Secretary failed to consider, or at least failed to articulate that he considered. There was evidence to support the Secretary's position. A genuine dispute existed. Thus, we detect no error in the district court's finding that the Secretary's position was substantially justified.

*Id.* at 320 (citations omitted).

In sum, I believe that this Court grants far too many EAJA applications contrary to the express intent of Congress in drafting the EAJA statute. The issue here is only illustrative of the divergence between this Court's EAJA jurisprudence and the consensus in other federal courts. *Cf.*, Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct,* 55 La. L. Rev. 217 (1994). This Court should begin to interpret the EAJA statute consistently with other federal courts. The first step in that process is to overrule *Elcyzyn*. Under this standard, the putative error of the Board of failing to provide adequate reasons or bases for its decision would not be grounds for granting EAJA fees.

Moreover, even if, in our wisdom, we find the reasons or bases to have been inadequate here, there certainly were no cases from this Court that would have reasonably suggested to the Board, at the time it reached its decision, that the regulation putatively omitted from their decision, had any relevance to this case. The potential relevance of the regulation, as stated by the majority, is a matter of first impression that under *Stillwell* would have compelled this Court to have found the Secretary's position to be substantially justified had the issue been briefed, argued, and a decision rendered thereon, none of which happened. In effect, the Court finds the Board's position was not

substantially justified because it failed in its, I suppose, prophetic duty to look into its crystal ball and determine that this Court would find the regulation possibly applicable.

I also bring the Court's attention to a definition of "totality of the circumstances" that apparently eluded the majority. In *Chiu v. U.S.*, the Federal Circuit held that courts must "look at the entirety of the government's conduct and make a judgment call whether the government's *overall* position had a reasonable basis in both law and fact." 948 F.2d 711, 715 (Fed.Cir. 1991) (emphasis added). In so doing, the Federal Circuit rejected the en banc majority's holding that the government's position must be correct as to every jot and tittle. By turning the plain meaning of the phrase "totality of the circumstances" on its head, it is the majority who seems to be doing what it is unacceptable; searching to find an error "to ensure an award of EAJA fees."

Finally, I will reassert my position that I do not believe that EAJA fees should be granted in cases where the appellant's attorney is appearing pro bono. EAJA is a reimbursement or fee shifting statute for attorney fees and expenses. *See* 28 U.S.C. § 2412(d)(1)(A) (stating that a court may award legal fees "incurred by that party" who prevailed in the action against the government); *Kay v. Ehrler,* 499 U.S. 432 (1991) (holding that a pro se attorney is not eligible to be reimbursed under EAJA because he has not incurred any fee); *TGS v. U.S.,* 983 F.2d 229, 230 (Fed. Cir. 1993) ("In its requirement that the fees have been 'incurred' by the party, § 2412(d) differs from § 2412(b) and other fee-shifting statutes that authorize the award of 'a reasonable attorney's fee"); *U.S. v. Paisley*, 957 F.2d 1161 (4th Cir. 1992) (EAJA award not available because prevailing party did not "incur" any legal expenses if legal expenses would have been covered by third party). If the appellant has not incurred any attorney fees, there is nothing for which to reimburse the appellant. *Cf. Hirsh v. U.S.*, 948 F.2d 1240, 1251 (Fed. Cir. 1991) (stating that EAJA reimbursement is not available for a party who "undertakes appellant litigation as a volunteer").

In this case, the Veterans Consortium Pro Bono Program requested a stay of proceedings in order to attempt to obtain counsel for this appellant who had been proceeding pro se. Through its efforts, the Consortium obtained the appellant's counsel of record. On July 22, 1999, appellant's counsel filed a Notice of Appearance, in which he certified that "I am participating in The Veterans Consortium Pro Bono Program and my representation is without charge to the appellant." As a result, the appellant has not incurred any attorney fees in this appeal and, therefore, there is no need

to reimburse the appellant. An action for EAJA fees is an action by the appellant, not his attorney, and is entirely for the purpose of reimbursing him for fees incurred. His attorney has neither independent action nor independent entitlement to EAJA. While I recognize that this Court and other federal courts have allowed EAJA payments to pro bono counsel, in so doing, these courts have ignored the plain language of the statute which states that EAJA is designed to reimburse prevailing parties for fees "incurred." In fact, to say the Court has "ignored" the language of the statute in circumventing its plain meaning is a euphemism. These decisions have perverted its meaning by indulging in an analysis which, in effect, says that the fees are incurred as a result of the successful EAJA application! In short, a successful EAJA applicant incurs fees (after the case is over), while an unsuccessful applicant does not. It is unfortunate that this Court goes along with this charade.

My purpose is not to discourage attorneys from participating in The Veterans Consortium Pro Bono Program, for I commend them for their excellent work in reducing the number of pro se appellants before this Court. As is true with all pro bono work, the reward is obtained by the satisfaction of representing an indigent party without compensation, who otherwise would not be able to secure counsel. The reward should not come from being reimbursed for the "pro bono" representation. Getting fees for pro bono work is a contradiction in terms. My opinion is that the statute, as currently written, does not authorize payment under EAJA if the prevailing party did not incur any attorney fees. By creating a legal fiction in holding that appellants have incurred attorney fees, nunc pro tunc, in pro bono cases, the Court has rewritten the language of the statute. If Congress desires to change the statute to award EAJA fees for pro bono counsel, it is within their province, and not this Court's, to make the appropriate amendments. Lastly, I express a personal hope that attorneys who volunteer for pro bono representation through The Veterans Consortium Pro Bono Program, receive pro bono credit from their state bar for that representation, and are granted EAJA fees, would donate those fees to the Consortium so that they may further assist indigent veterans in finding representation before this Court.

In conclusion, regardless of what evidence is used to determine whether the Secretary's position was substantially justified, I do not believe that there are grounds for an award of EAJA fees in this case under any circumstances.

GREENE, *Judge*, with whom HOLDAWAY, *Judge*, joins, dissenting: I join Judge Holdaway's dissent. It provides a clear view of the landscape of this case and offers a well-stated observation concerning the general posture of Equal Access to Justice Act (EAJA) applications filed with this Court. I write separately to stress my disagreement with the majority's reliance on the failure of the Board to provide an adequate statement of reasons or bases for not addressing VA regulation 38 C.F.R. § 21.3032(b)(3) (1998).

The majority opinion asserts that the Secretary was not substantially justified in this case because the Board's 1998 decision lacked an adequate statement of reasons or bases. It concluded that the Board should have discussed the potential impact of VA regulation 38 C.F.R. § 21.3032(b)(3) on extending for good cause Mr. Cullens' late filing of enrollment certificates to perfect his claims for educational assistance. However, in my view, the settlement agreement in this case eliminated this issue, if it indeed ever existed.

In this case, the settlement agreement manifests the parties' intent that Mr. Cullens would be awarded benefits based upon a change in the law. Pursuant to that settlement agreement, the appeal filed to this Court, and the attending issues arising from the 1998 Board decision were dismissed with prejudice. With that disposition, there should not have been any further areas of controversy requiring litigation. Indeed, in my view, by agreeing to the terms of the settlement, Mr. Cullens waived any arguments of error in the Board decision. Further, the alleged error concerning the application of Section 21.3032(b)(3) was raised in an unfiled motion with the Secretary and only became part of the record as a document filed with the EAJA application. Although the majority notes that the Secretary was aware that Mr. Cullens raised this as a potential Board error, I agree with Judge Holdaway that whether or not the appellant would have been entitled to benefits but for the change in the law is irrelevant. Thus, whether the Board addressed the section 21.3032(b)(3) good cause exception or the Secretary raised this created issue in addressing substantial justification likewise is irrelevant. Nevertheless, the majority has stretched to reach a result that does not comport with the factual basis of the case or recognize all of the provisions of the regulation involved. Section 21.3032(b)(3) requires the claimant to file a request for an extension to file matters to complete a claim, and in that request to show good cause "as to why the required action could not have been taken during the original time period and could not have been taken sooner than it was."

28

Mr. Cullens did not file an extension request and even if he had, any denial is a separate appealable issue under that regulation. Therefore, I cannot join in the position that EAJA fees should be awarded in this case.